(No. 60412.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. ERIN B. MURPHY, Appellee.

*Opinion filed October 3, 1985.*

Neil F. Hartigan, Attorney General, of Springfield, and Edward F. Petka, State's Attorney, of Joliet (Jill Wine-Banks, Solicitor General, Mark L. Rotert and James E. Fitzgerald, Assistant Attorneys General, of Chicago, and John X. Breslin and Gary F. Gnidovec, of the State's Attorneys Appellate Service Commission, of Ottawa, of counsel), for the People.

Bruce A. Heidecke, of Westmont, for appellee.

JUSTICE WARD delivered the opinion of the court:

Following her indictment for reckless homicide (Ill. Rev. Stat. 1981, ch. 38, par. 9—3(a)) in the circuit court of Will County, Erin B. Murphy filed a motion *in limine* to exclude from evidence the results of a chemical analysis of a sample taken of her blood. The circuit court granted the motion, and the State filed an interlocutory appeal to the appellate court under our Rule 308 (87 Ill. 2d R. 308). The appellate court affirmed the order of exclusion (124 Ill. App. 3d 695), and we granted the State's petition for leave to appeal under Rule 315 (87 Ill. 2d R. 315).

At the hearing on the defendant's motion, the parties stipulated that Murphy was driving her automobile on the night of February 4, 1983, when it struck a guardrail along Washington Street in Naperville. Her passenger, Kathleen Eckardt, sustained fatal injuries. It was stipulated that Murphy was taken to Edward Hospital in Naperville, where a doctor, in the course of emergency treatment for injuries she received, ordered a blood sample to be taken. The sample was taken and analyzed by Maria Cruz, a medical technician at the hospital laboratory. Murphy was not under arrest at the time the blood sample was drawn. Finally, it was stipulated that the laboratory at Edward Hospital was licensed by the Illinois Department of Public Health to conduct, *inter alia*, chemical analyses of blood samples for medical purposes. It was also stipulated that the laboratory and technicians there had not been certified under sections 12.01 through 12.04 of the Standards and Procedures for Testing for Alcohol and/or Other Drugs (Standards) of the Illinois Department of Public Health as provided for in section 11—501.2 of the Illinois Vehicle Code (Ill. Rev. Stat. 1981, ch. 95½, par. 11—501.2).

Section 11—501.2 states:

*"Upon the trial of any civil or criminal action or proceeding arising out of an arrest for an offense as defined in Section 11—501* [that section defines the offense of 'driving while under the influence of alcohol, other drug or combination thereof'] or a similar local ordinance, evidence of the concentration of alcohol, other drug or combination thereof in a person's blood or breath at the time alleged, as determined by analysis of the person's blood, urine, breath or other bodily substance, shall be admissible. Where such test is made the following provisions shall apply:

1. Chemical analyses of the person's blood, urine, breath or other bodily substance to be considered valid under the provisions of this Section shall have been performed according to standards promulgated by the Department of Public Health in consultation with the Department of Law Enforcement by an individual possessing a valid permit issued by that Department for this purpose." (Emphasis added.) Ill. Rev. Stat. 1981, ch. 95½, par. 11—501.2.

The State contends that the requirements that a laboratory be certified by the Department of Public Health and that the person conducting a chemical analysis have a permit issued by the Department are limited to prosecutions of the offense of driving while under the influence which is defined in section 11—501. It is the State's position that the results of the blood-alcohol test from Edward Hospital, though not conducted in a certified laboratory or by a technician with a valid permit under section 12.04 of the Standards, were admissible in this prosecution for reckless homicide. The State says that a recent amendment to section 11—501 shows clearly that the legislative intendment was to restrict the certification requirements to prosecutions for driving while under the influence.

It is fundamental in statutory construction that courts shall ascertain and give effect to the intent of the

legislature (*Sayles v. Thompson* (1983), 99 Ill. 2d 122, 125; *People v. Boykin* (1983), 94 Ill. 2d 138, 141), and that, in doing so, the language of the statute is to be considered the surest indication of the legislative intent (*People v. Robinson* (1982), 89 Ill. 2d 469, 475; 2A Sutherland, Statutory Construction sec. 45.05 (4th ed. 1984)). Here the statutory language makes clear that the certification requirements are to apply only to proceedings "arising out of an arrest for an offense as defined in Section 11—501." Section 11—501 defines only the offense of driving while under the influence. (Ill. Rev. Stat. 1981, ch. 95½, par. 11—501.) To hold otherwise and extend the certification requirements to reckless homicide prosecutions would render the phrase "arising out of an arrest for an offense as defined in Section 11—501" without meaning. A statute, however, should, whenever possible, be construed so that no word, clause or sentence is rendered meaningless or superfluous. (*City of East Peoria v. Group Five Development Co.* (1981), 87 Ill. 2d 42, 47; 2A Sutherland, Statutory Construction sec. 46.06 (4th ed. 1984).) The legislature expressly defined the offense to show that the provisions concerning chemical testing were to apply only to prosecutions for that offense.

Prior to amendment, section 11—501(c) provided:

"(c) *Upon the trial of any action or proceeding arising out of the acts alleged to have been committed by any person while driving or in actual physical control of a vehicle while under the influence of intoxicating liquor*, evidence of the amount of alcohol in the person's blood at the time of the act alleged as shown by a chemical analysis of his breath, blood, urine, saliva or other bodily substance is admissible \*\*\*." Ill. Rev. Stat. 1979, ch. 95½, par. 11—501(c).

The amendment was designed to remove ambiguous language and to clarify the intention to confine technical

testing requirements to the offense of driving while under the influence. While the amendment's drafters may not have admirably succeeded in removing every ambiguity, they did make clear that section 11—501.2 was applicable only to the offense "defined in section 11—501," *i.e.*, driving under the influence.

The appellate court's holding here and in *People v. Emrich* (1985), 132 Ill. App. 3d 547, rested its interpretation of the section only on the introductory language "[u]pon the trial of any civil or criminal action or proceeding," and did not give effect to the qualifying language "arising out of an arrest for an offense as defined in Section 11—501" which follows. A provision in a statute must be read in its entirety in order to ascertain and give effect to the intent of the legislature. *City of Mount Carmel v. Partee* (1979), 74 Ill. 2d 371, 375.

The appellate court's holdings in *People v. Hartwick* (1984), 128 Ill. App. 3d 272, and *People v. Pezzette* (1983), 112 Ill. App. 3d 124, correctly interpreted the statute's certification requirements. In *Hartwick*, the court held that blood-alcohol-test results were admissible in a reckless-homicide prosecution even though the certification requirements relating to the administration of blood-alcohol tests under the implied-consent statute (Ill. Rev. Stat. 1981, ch. 95½, par. 11—501.1) were not satisfied. The court stated: "However, we conclude that the provisions of that code [the Illinois Vehicle Code] do not apply to a prosecution for reckless homicide and are limited in their application to prosecutions for offenses as defined in section 11—501 of the Illinois Vehicle Code [citation]." (128 Ill. App. 3d 272, 274.) In *Pezzette*, the defendant was charged with reckless homicide. A motion *in limine* to suppress the results of a blood analysis was allowed on the ground that the analysis conducted did not conform to the testing requirements of section 11—501(b). In reversing the order suppressing the evidence,

the appellate court noted that the certification standards were applicable to section 11—501, the driving-under-the-influence provision, and, further, that the legislative design was to protect an accused from being subjected to nonconsensual or inaccurate testing procedures by law-enforcement officers. That this was the legislative design is shown by the portion of section 11—501.2 which provides that a "person tested may have a physician, or a qualified technician, chemist, registered nurse, or other qualified person of their own choosing administer a chemical test or tests in addition to any administered at the direction of a law-enforcement officer." (Ill. Rev. Stat. 1981, ch. 95½, par.11—501.2(a)(3).) It can be seen from this that the certification requirements set out in the Standards are not a *sine qua non* of admissibility. The certification requirements are a protection afforded an accused to insure that the results of testing called for by law-enforcement officers in driving-under-the-influence cases are reliable. In other situations, as here, the ordinary standards of admissibility will be applied.

The defendant and the trial judge did not question the professional validity of the testing here. Indeed, the procedures used were, in a sense, in substantial compliance with the Standards. Maria Cruz is a trained medical technician who acted under the supervision of a physician. Her testimony was that a benzoxiquine solution, a disinfectant containing no alcohol or other volatile organic substance which might interfere with the analytical method, was used to cleanse Murphy's skin where the blood specimen was to be drawn. A vacuum-type tube was used to collect the specimen, and after the blood was drawn the tube was labeled with the defendant's name, the date and time of collection, and the word "alcohol" to identify the sample as the one used to determine the concentration of alcohol in the defendant's blood. The collection tube did not contain a preservative

as the Standards require. Nor was a sample of the blood forwarded to the Illinois Department of Public Health, nor was a sample retained in the laboratory at Edward Hospital for one year as called for by the Standards. Of course, when the sample was drawn Murphy was not under arrest, the testing was not performed at the request of a law-enforcement officer, and no reason existed to send a sample to the Department of Public Health or to retain a sample at the hospital laboratory for possible later examination by the defendant.

Dr. Filipe Serna, the chief of pathology and the staff member responsible for the operation of the laboratory at Edward Hospital, testified that the Illinois Department of Public Health certified the laboratory to perform blood-alcohol tests for medical purposes. He stated that the laboratory uses a cobas chemical analyzer to test for the concentration of alcohol in the blood, and that this is the procedure commonly used in the medical profession for such tests. He testified that the laboratory is not only examined every six months by the Department of Public Health, as required by the Standards, but also is examined every two months by the College of Pathologists. Dr. Serna said that the presence or absence of an anticoagulant or preservative in the blood sample would not affect the result of a test designed to measure the concentration of alcohol in the sample because the dehydrogenase enzyme used in the procedure reacts specifically to alcohol and would not register the presence or absence of other substances.

There was no doubt in the trial judge's mind as to validity and accuracy of the testing in the hospital laboratory. He described the hospital laboratory as "superlative" and said that it more than satisfied professional standards; that Ms. Cruz was well qualified; and that Dr. Serna was a highly trained clinical pathologist.

The judge allowed the defendant's motion only be-

cause he felt under compulsion, because of the statute, to do so.

We hold that the Standards are applicable only to the offense of driving while under the influence, and that the test results should have been received in evidence under the usual standards governing the admission of evidence.

For the reasons given, the judgments of the appellate and circuit courts are reversed, and the cause is remanded to the circuit court for further proceedings consistent with this opinion.

*Reversed and remanded.*