(No. 61943.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. JOSEPH EMRICH, Appellee.

*Opinion filed October 1, 1986.*

Neil F. Hartigan, Attorney General, of Springfield, and Richard M. Daley, State's Attorney, of Chicago (Mark L. Rotert, Assistant Attorney General, of Chicago, and Joan S. Cherry, Peter D. Fischer, Mary Louise Norwell, and James E. Fitzgerald, Assistant State's Attorneys, of counsel), for the People.

Stephen K. Bell, of Wheaton (Joseph H. King, Jr., of counsel), for appellee.

JUSTICE SIMON delivered the opinion of the court:

The defendant, Joseph Emrich, was involved in an early morning automobile collision in which two people were killed. He was indicted on two counts of reckless homicide (Ill. Rev. Stat. 1983, ch. 38, par. 9—3(a)) and one count of driving under the influence of intoxicating liquor (Ill. Rev. Stat. 1983, ch. 95½, par. 11—501) (DUI). After a suppression hearing in the circuit court of Cook County, the circuit judge held that the results of a chemical analysis of the defendant's blood performed hours after the collision were inadmissible. The State appealed pursuant to our Rule 604(a)(1) (87 Ill. 2d Rd. 604(a)(1)), and the appellate court affirmed (132 Ill. App. 3d 547). We allowed the State's petition for leave to appeal (94 Ill. 2d R. 315).

Following the collision, the defendant was transported to Henrotin Hospital in Chicago, where Tereseta Easterling, a medical technologist, drew three blood samples at about 2:30 a.m. Each was drawn directly from the defendant into separate sterile vacuum tubes; one tube had a "green top," indicating that it contained an anticoagulant, while the two remaining vials had "red tops," signifying that they contained no anticoagulant or preservative. Easterling labeled the vials and proceeded to test the green-top sample for alcohol content. The record does not reveal the results of this test.

Easterling gave the two red-top vials to a police officer. They were first taken to the Chicago police crime lab, and then forwarded to Veronica Rotterman, a chemist with the Illinois Department of Public Health. Rotterman placed one of the vials in an "evidence refrigerator" and, shortly before 10 a.m., analyzed a sample from the second vial for alcohol content by means of a gas-chromatograph direct-injection test.

The defendant filed a discovery motion seeking, *inter alia*, the blood sample taken on the night of the collision. More than a month later, and almost two months after the blood was drawn, the State tendered the vial which Rotterman had placed in the evidence refrigerator. The defendant thereafter filed a motion to suppress Rotterman's analysis on the ground that the State's failure to properly maintain the blood sample effectively precluded him from obtaining an independent analysis; although his motion did not expressly raise the validity of Rotterman's results, he introduced substantial evidence on that question.

Only the analysis performed by Rotterman and the admissibility of that analysis absent an opportunity for an independent test by the defendant—not the test conducted by Easterling—are at issue here. In its memorandum in the trial court, the State argued that it was Rotterman's analysis which it sought to introduce. Both the circuit and appellate courts concluded that no issue had been raised regarding the admissibility of Easterling's results. (See 132 Ill. App. 3d 547, 548 n.1.) While there has been some allusion to that test in this court, neither party has clearly objected to the conclusion of the appellate court, and we see no reason to depart from it.

At the suppression hearing, testimony regarding the validity of Rotterman's analysis and the ability of the defense to conduct an independent test came from the defendant's expert, Richard Swiatek, a certified special-

ist in clinical chemistry, and Rotterman herself. Swiatek observed that the sample tendered to the defense was clotted. He testified that the absence of an anticoagulant in both the sample tested by the State and the one received by the defense would result in immediate clotting of the blood, making it impossible to test accurately the whole-blood alcohol concentration at any time after it was drawn. He also stated that the lack of a preservative, as distinguished from an anticoagulant, would affect the stability of the sample and would severely limit the time during which the blood would be suitable for testing. Rotterman acknowledged that blood drawn into a red-top tube would start clotting very rapidly, but stated that she had mixed the clotted blood cells with the blood serum in order to obtain a representative sample of the whole blood. She also conceded, however, that the test was not one of the whole blood. Rotterman asserted that the sample she tested had not deteriorated at the time of the analysis; she admitted, nevertheless, that the standards of her department call for blood to be drawn into vials containing an anticoagulant and a preservative.

The circuit judge found that the State had failed to maintain the blood sample properly, resulting in "spoilation" of the blood and making it impossible for the defendant to obtain an independent analysis. The judge held that this default denied the defendant due process, and allowed the motion to suppress the blood analysis on all the charges. The court also noted that the analysis was not performed in accordance with the Department of Public Health standards for chemical analysis of blood as required by section 11—501.2(a) of the Illinois Vehicle Code (Ill. Rev. Stat. 1983, ch. 95½, par. 11—501.2(a)). The appellate court did not reach the due process issue. In affirming the circuit court, it held only that the State's failure to comply with the statute and the stand-

ards barred the use of the analysis against the defendant. The appellate court relied specifically on the failure to add an anticoagulant to the blood sample.

Section 11—501.2(a) provides in relevant part:

"Upon the trial of any civil or criminal action or proceeding arising out of an arrest for an offense as defined in Section 11—501 or a similar local ordinance, evidence of the concentration of alcohol, other drug or combination thereof in a person's blood or breath at the time alleged, as determined by analysis of the person's blood, urine, breath or other bodily substance, shall be admissible. Where such test is made the following provisions shall apply:

1. Chemical analyses of the person's blood, urine, breath or other bodily substance to be considered valid under the provisions of this Section shall have been performed according to standards promulgated by the Department of Public Health in consultation with the Department of Law Enforcement by an individual possessing a valid permit issued by that Department for this purpose." (Ill. Rev. Stat. 1983, ch. 95½, par. 11—501.2.)

One of the standards promulgated pursuant to this section requires that "[w]hen vacuum-type blood-collecting containers are *** used as primary collecting tubes, two (2) tubes should be collected *each containing an anticoagulant/preservative* which will not interfere with the intended analytical method." (Emphasis added.) Rule 11.01(d)(3), Department of Public Health, Standards and Procedures for Testing of Breath, Blood and Urine for Alcohol and/or Other Drugs (1982).

The appellate court's view was that section 11—501.2 made the chemical-analysis standards applicable to both reckless homicide and DUI prosecutions. Because the State here tested a blood sample collected in a tube containing no anticoagulant or preservative, the appellate court held that the analysis had to be suppressed with

respect to all the counts in the indictment. Following the appellate court decision in this case, however, we held in *People v. Murphy* (1985), 108 Ill. 2d 228, that the application of section 11—501.2 is limited to prosecutions for driving under the influence, and that a chemical blood analysis offered to prove reckless homicide need only be judged by "ordinary standards of admissibility." (108 Ill. 2d 228, 234.) We therefore consider first the admissibility of the blood analysis on the driving-under-the-influence charge and then on the reckless-homicide charges.

In *Murphy* we emphasized that section 11—501.2 was intended to ensure reliability of evidence introduced in prosecutions for driving under the influence. (108 Ill. 2d 228, 234.) The State contends here, though, that even in a DUI case that section is not mandatory and that the failure to comply with the standards incorporated in the statute does not render the evidence inadmissible. In support of this position, the State calls attention to a 1982 amendment of chapter 11 of the Illinois Vehicle Code. Prior to that time section 11—501.2 did not exist, but section 11—501(d) read that "[c]hemical analysis of the person's blood or breath to be considered valid under this Section must be performed according to uniform standards adopted by the State Department of Public Health." (Ill. Rev. Stat. 1979, ch. 95½, par. 11—501(d).) The 1982 amendment substantially revised chapter 11, including section 11—501, and added a new section 11—501.2 (quoted above) (1981 Ill. Laws 1734, 1744, 1751-53), which provides that a chemical analysis, "to be considered valid under the provisions of this Section[,] shall have been performed according to standards" promulgated by the Department. (Ill. Rev. Stat. 1983, ch. 95½, par. 11—501.2.) The State insists that the change from "must," as used in the superseded statute, to "shall have been," as used in section 11—501.2, evidences a legislative intent to make the standards directory only

and not mandatory.

While it is true that in some circumstances the legislature may intend that the word "shall" is to have permissive or directory effect only, ordinarily it is regarded as indicative of mandatory intent. (*Andrews v. Foxworthy* (1978), 71 Ill. 2d 13.) The State has given us no reason to conclude that the legislature sought to depart from the usual meaning of the word "shall" here and radically alter the effect of the statute other than the bare fact that the words "shall have been" are now used; the argument is unpersuasive.

As explained above, the legislature did not simply strike out the word "must" and substitute "shall" here, thereby furnishing at least a colorable argument for an intent to change the meaning of the statute. The State's theory would in any case be implausible because it suggests that the legislature, intending to eliminate the mandatory effect of the word "must," chose to substitute "shall," another word which is ordinarily mandatory. Moreover, the State's argument completely fails to account for the fact that the new paragraph, like former section 11—501(d), provides that the standards have to be complied with for a blood analysis "to be considered valid." The obvious corollary is that the analysis will not be considered valid, and will be inadmissible, absent such compliance. Read as a whole, the statute does not support the interpretation suggested by the State; compliance with the standards is a prerequisite to admissibility on a DUI charge.

The State also asserts that the analysis of the defendant's blood is admissible despite the failure to meet the standards because it was not taken at the request of any police officer. In advancing this argument, the State relies on section 11—501.2(a)(2), which provides that "[w]hen a person shall submit to a blood test at the request of a law enforcement officer under the provisions

of Section 11—501.1 [the implied-consent statute], only a physician" or other qualified person may draw the blood. (Ill. Rev. Stat. 1983, ch. 95½, par. 11—501.2(a)(2).) This subsection only sets forth an additional standard to be met in cases where a blood sample is drawn at an officer's request; it does not modify the prior subsection which provides that in order for a chemical analysis offered by the State "to be considered valid," it must conform to the Department of Public Health standards. To restrict the application of the standards to analyses performed at the express request of the police would undercut the legislative policy of ensuring the reliability of all chemical analyses introduced against defendants in DUI cases. A police request is irrelevant to that protection.

Since the sample offered by the State failed to comply with the requirement of an anticoagulant and preservative, the analysis of the defendant's blood is inadmissible on the charge of driving under the influence. We affirm that portion of the appellate court's judgment, and now turn to the question of admissibility on the reckless-homicide charges.

*People v. Murphy* (1985), 108 Ill. 2d 228, held that compliance with the standards promulgated pursuant to section 11—501.2 is not a prerequisite to admitting a blood analysis in a prosecution for reckless homicide. The defendant contends that when both DUI and reckless homicide are charged, the evidence on both charges must be judged by the standards governing DUI evidence. This argument fails because the statute does not by its terms apply to evidence introduced in reckless homicide cases, even if the DUI offense, to which the standards do apply, is tried with the homicide counts.

The question with respect to the reckless-homicide charges is, as decided in *Murphy*, whether the blood analysis meets the ordinary test of admissibility. (108 Ill. 2d 228, 234.) The defendant maintains that the analysis

should be excluded on the basis of his expert's testimony that the failure to draw the blood into a tube containing an anticoagulant and preservative made it impossible for Rotterman to conduct an accurate test of the whole-blood alcohol concentration. Rotterman's testimony, however, was that a representative sample of the whole blood could be obtained by mixing the clotted blood (as she did), and that the blood had not deteriorated when she tested it. Although the circuit judge recognized, as he put it, that "there [was] a conflict in the testimony as to the validity of the test results made by Ms. Rotterman," he did not make an express finding on whether the absence of an anticoagulant and preservative prevented Rotterman from performing an accurate test. The judge only concluded that the sample eventually delivered to the defense had spoiled by the time it was tendered. This finding was responsive to the central issue at the suppression hearing, but does not address the accuracy of Rotterman's test, a question of crucial importance after our decision in *Murphy*.

In the absence of a finding by the trial judge on the factual question of the accuracy of Rotterman's test, this court simply has no basis for determining whether the results of that test are admissible. While in *Murphy* we held that the results of a blood test should have been admitted despite the fact that no preservative was used in collecting the sample, in that case we relied on the fact that "[t]here was no doubt in the trial judge's mind as to [the] validity and accuracy of the testing." (108 Ill. 2d 228, 235.) Our holding in *Murphy* that the blood analysis should have been admitted, which was based on the evidence presented and the trial judge's findings, does not compel the same result here. This is particularly true inasmuch as we have no way of knowing whether the expert testimony in *Murphy* would be the same if applied to the testing procedure relied upon by the State in this

case. On remand, the trial judge should determine after a review of the record and a further evidentiary hearing, if needed, whether the test of blood containing no anticoagulant or preservative, performed more than seven hours after the blood was drawn, was sufficiently accurate to sustain the admission of the Rotterman analysis.

The defendant's final contention is that we should affirm the suppression order with respect to all the charges for the reason stated by the circuit judge (but not passed upon by the appellate court)—the failure to maintain a proper sample for independent testing denied the defendant due process. The State responds that this view cannot be squared with the Supreme Court's decision in *California v. Trombetta* (1984), 467 U.S. 479, 81 L. Ed. 2d 413, 104 S. Ct. 2528. In *Trombetta*, the defendants, who were accused of driving while intoxicated, sought to suppress the results of an Intoxilyzer breath test, arguing that the failure of the authorities to maintain breath samples for independent testing denied them due process. The court rejected the claim and stated that in order to amount to a constitutional violation the evidence "must both possess an exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." (467 U.S. 479, 489, 81 L. Ed. 2d 413, 422, 104 S. Ct. 2528, 2534.) Neither requirement was met there.

We do not consider the defendant's due process claim meritorious. Of course, if the trial judge finds, as the defendant claims, that testing blood which has not been drawn into a tube containing an anticoagulant and preservative yields inaccurate results, reliance on the defendant's inability to procure an independent test would be unnecessary; the State's analysis would then fail to meet the ordinary threshold of admissibility. If

such an analysis is found to be admissible, the failure to preserve a blood sample for independent testing by the defendant would meet neither of the *Trombetta* requirements: the evidence would more likely be inculpatory than exculpatory, and, in any case, the way would still be open for the defendant to utilize "alternative means of demonstrating [his] innocence" (*California v. Trombetta* (1984), 467 U.S. 479, 490, 81 L. Ed. 2d 413, 423, 104 S. Ct. 2528, 2535) by producing expert testimony on the defects he claims exist in the State's analysis. Therefore, the failure to maintain a properly preserved sample for the defendant's testing does not rise to the level of a constitutional violation. See *People v. Jordan* (1984), 103 Ill. 2d 192.

For the reasons stated, the judgments of the appellate and circuit courts are affirmed with respect to the DUI count and vacated with respect to the reckless-homicide counts. The cause is remanded to the circuit court of Cook County for further proceedings consistent with this opinion.

*Appellate court affirmed in part and vacated in part; circuit court affirmed in part and vacated in part; cause remanded.*