FIRST DIVISION
MARCH 17, 2008

No. 1-06-2656

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| | ) | |
| v. | ) | No. 33491716 |
| | ) | |
| MAREN BAIR, | ) | Honorable |
| | ) | Elmer James Tolmaire, |
| Defendant-Appellant. | ) | Judge Presiding. |

MODIFIED OPINION UPON DENIAL OF PETITION FOR REHEARING

JUSTICE ROBERT E. GORDON delivered the opinion of the court:

After a bench trial on March 28, 2006, defendant Maren Bair was convicted of driving under the influence of alcohol (DUI) and sentenced on September 7, 2006 to 12 months' supervision. Defendant appeals on the ground that the doctor failed to disinfect her skin prior to drawing a blood sample, as then required by the Illinois Administrative Code (20 Ill. Admin. Code §1286.320(c)(2004). For the reasons discussed below, we affirm.

BACKGROUND

Defendant was charged with driving a motor vehicle while the alcohol concentration in her blood or breath was 0.08 or more, in violation of section 11-501(a)(1) of the Illinois Vehicle Code (625 ILCS 5/11-501(1)(a) (West 2004)). On March 28, 2006, defendant waived her right to a

jury trial both in open court and in writing, and the case proceeded to a bench trial. The State's first witness, Neal Semar, testified that, at approximately 6:20 a.m. on August 27, 2005, Semar was the sole passenger in a vehicle driven by defendant on Route 290 in Chicago, when the vehicle became involved in an accident.

The State's second witness, Robert Goodman, testified that at approximately 6:20 a.m. on August 27, 2005, he was driving a tractor-trailer truck eastbound on Route 290 in Chicago, when he observed an accident. Law enforcement personnel were on the scene and had blocked off the center lane and the right lane. As a result, the traffic was forced to merge into the left lane, while passing the accident. After Goodman drove past the accident, he moved his truck into the right lane.

Goodman further testified that he observed a light-colored Saturn automobile starting to move from the left lane into the center lane. A dark automobile in the center lane tapped the bumper of the Saturn, and the Saturn went into a 360-degree spin. The Saturn "came across all the lanes of traffic," hit the concrete barrier wall toward the passenger's side of Goodman's truck and then "flipped" into Goodman's lane of traffic, right in front of Goodman's truck. Goodman's truck then struck the "upside-down" Saturn, which "went flying down the road."

Goodman further testified that he stopped his truck and approached the Saturn. A young male passenger, later identified as Semar, exited the Saturn and then helped a woman, later identified as defendant, out of the Saturn. Emergency personnel at the scene of the first accident arrived quickly at the scene of the Saturn's accident.

Illinois State Trooper Bergeman testified as follows. On August 27, 2005 at 6:20 a.m.,

2

he was on duty and assigned to the Eisenhower Expressway, Interstate 290, in Chicago, when he received a call concerning a rollover accident. After he arrived at the accident scene, he observed a Saturn resting on its roof , a parked tractor-trailer truck, several other vehicles and a young woman, later identified as defendant, sitting on the shoulder of the road and surrounded by several other people. Bergeman observed that defendant had several facial lacerations. An ambulance arrived and transported defendant to Cook County Hospital. Bergeman transported Semar, the Saturn's passenger, to Cook County Hospital because Semar had no other means of transportation. After Bergeman arrived at the hospital, defendant was taken to an X-ray unit and Bergeman waited approximately an hour to interview her.

Bergeman testified that during his interview of defendant, he noticed an odor of alcohol on her breath. Defendant admitted that she had been drinking earlier. Bergeman issued defendant a ticket, read "Warnings to Motorists" to her and asked her to submit to "a DUI kit." Bergeman then asked Dr. Dabbah, one of defendant's treating physicians, to obtain two blood samples from defendant. At 9:40 a.m., Bergeman observed the doctor utilize two vials from a DUI kit to obtain the blood samples. Bergeman did not recall whether the doctor used a disinfectant. The vials were returned to the kit, which was initialed and sealed. Bergeman completed the paperwork that had been in the kit, and transported the kit from the hospital to the evidence vault at the district headquarters of the State Police in Des Plaines.

Dr. Dabbah testified as follows. On August 27, 2005, he was a resident physician at Cook County Hospital, where he encountered defendant in the trauma unit. During the doctor's interview of defendant, the doctor smelled alcohol on her breath and defendant admitted to him

that she "drank the night before into the early morning." After a discussion with Trooper Bergeman, Dr. Dabbah obtained two blood samples from defendant, in the trooper's presence. Concerning the lack of disinfectant, Dr. Dabbah testified:

"Q. And you indicated that you didn't sterilize the

defendant's arm, why is that?

DR. DABBAH: Because if you wipe her arm with alcohol,

it can supposedly contaminate the specimen."

After drawing two vials of blood, Dr. Dabbah labeled the vials and gave them to the State trooper. Dr. Dabbah witnessed Trooper Bergeman seal the vials into the DUI kit.

Dr. Dabbah testified that he remembered well the events concerning defendant because this was the first time that he had ever drawn blood for a DUI kit. The kit came with an instruction booklet, and he and the trooper read the instruction booklet before he drew defendant's blood. He also testified that a person's blood-alcohol level generally decreases over time, because the body metabolizes a certain amount per hour. He explained that shortly after a person consumes alcohol, his or her blood alcohol level will rise and "peak." Then the level will decrease over time.

Jacqueline Provenzale, a forensic scientist employed by the Illinois State Police laboratory, was accepted by the trial court as an expert "in the area of toxicology and forensic science." Defense counsel did not object to her acceptance as an expert, subject to cross-examination. Provenzale testified that on September 22, 2005, she removed two vials of defendant's blood from a sealed DUI kit and tested the blood for blood alcohol level. Based on the tests she

performed, her opinion was that the ethanol was 0.108 grams per decaliter. Defense counsel objected on "foundation" grounds to Provenzale stating her opinion concerning the amount of ethanol in defendant's blood. The trial court overruled the objection. Provenzale then responded affirmatively to the question of whether her opinion was "based on a degree of scientific certainty." Provenzale also explained that, normally, the blood alcohol level will "peak" within an hour and a half after consumption. After it peaks, it will begin to decrease.

Provenzale further testified that if an alcohol swab is used to clean the skin prior to the drawing of blood, the swab will have no effect on the person's blood alcohol level. She explained that the instrumentation used in her laboratory distinguishes between different types of alcohol, such as ethanol and isopropanol. She testified that isopropanol is known commonly as rubbing alcohol, and is the type of alcohol found in alcohol swabs. Prior to her employment with the Illinois State Police, she worked at a hospital where she drew blood thousands of times.

Defense counsel moved to bar all of Provenzale's testimony on the ground that the prosecutor did not provide defendant with the log sheet on which Provenzale made notes while she was performing the blood tests. Provenzale testified that the log sheet contained information concerning "the controls and the samples that are run that day." The trial court denied the motion.

After cross-examination, defense counsel objected to Provenzale's qualifications to testify as an expert about "what goes on in the body as to alcohol rising and falling" and moved to bar her testimony on that subject. The trial judge admitted the testimony, stating that since this was "a bench trial, I am the one that's going to determine the weight and credibility."

5

Defense counsel objected to the admission of: (1) the vials of the blood, stating "object for the record for foundation"; (2) the photocopies made by Provenzale of the seals on the DUI kit, on the ground that the photocopies did not qualify under the business records exception to the hearsay rule; and (3) Provenzale's laboratory report, also on business record grounds. The trial court admitted all three exhibits into evidence.

Defense counsel moved for a directed verdict claiming that the State had not completed the chain of custody for the sealed DUI kit, because the State did not call as a witness the state trooper who transported the kit from State Police headquarters to the State Police laboratory. After the trial court denied the motion, the defense rested without calling witnesses or presenting evidence.

During closing argument, defense counsel stated: "Judge, we're not contesting whether or not Ms. Bair was driving the car that night. That's not an issue in this case." Defense counsel argued that the trial court should find defendant not guilty of the DUI charge because of: "the chain of evidence problem"; the lack of evidence as to whether defendant received alcohol-based medication or disinfectant from the emergency medical personnel; the possibility that defendant's blood-alcohol level rose from the time of the accident and peaked at the time of the blood draw; and the defendant's inability to cross-examine Provenzale about her log sheet.

After hearing closing argument from both sides, the trial court found the defendant guilty on the charge of driving under the influence in violation of section 11-501(a)(1) (625 ILCS 5/11-501(a)(1) (West 2004)). On April 13, 2006, the defendant filed a motion for a new trial, which alleged generally that defendant was deprived of her due process rights without specifying the

deprivation. On June 9, 2006, the defendant filed an amended motion that claimed "the court erred in allowing testimony of Ms. Bair's blood draw because there was no testimony that a disinfectant was used," as required by regulation.

On September 7, 2006, after hearing argument from counsel, the trial court denied the motion for a new trial stating: "Counsel, I'm just not at all sure you even preserved the argument as to the regulations." The defendant was then sentenced to 12 months' supervision, with a scheduled termination date of September 6, 2007. A notice of appeal was filed on September 7, 2006, and this appeal followed.

ANALYSIS

Defendant appeals on the ground that the doctor failed to disinfect her skin prior to drawing a blood sample, as then required by the Illinois Administrative Code (20 Ill. Adm. Code §1286.320(c)(2004)). Defendant puts forth two legal theories as to why this claimed error entitles her to a new trial: (1) the trial court erred in admitting evidence acquired in violation of the Administrative Code; and (2) her trial counsel was ineffective for failing to file a motion in limine to exclude the test results at trial.

Since defendant's claim involves statutory and code interpretation only, it is purely a question of law, and our standard of review is de novo. People ex rel. Devine v. Sharkey, 221 Ill. 2d 613, 617 (2006).

This court will review defendant's claim only for plain error, because defendant failed to object specifically on this ground at trial. The Illinois Supreme Court has held that a "defendant must both specifically object at trial and raise the specific issue again in a posttrial motion to

7

preserve an alleged error for review." People v. Woods, 214 Ill. 2d 455, 470 (2005); People v. Piatkowski, 225 Ill. 2d 551, 564 (2007).

The defendant claims that she preserved her claim about the lack of disinfectant, when she objected as to "foundation" before the laboratory scientist gave her opinion about the level of ethanol in the defendant's blood. The following portion of the trial transcript shows the context for defendant's objection:

> "PROSECUTOR: From these tests, were you able to form an opinion as to the level of ethanol in the defendant's blood?
>
> MS. PROVENZALE: Yes, I was.
>
> PROSECUTOR: And what is your opinion?
>
> DEFENSE ATTORNEY: Objection, foundation.
>
> PROSECUTOR: Judge, all the foundation has been laid.
>
> THE COURT: Overruled.
>
> PROSECUTOR: What is your opinion?
>
> MS. PROVENZALE: The ethanol was 0.108 grams per deciliter."

The defendant does not claim that the above objection to "foundation" was an objection to the expert's qualifications or the conclusions that the expert drew from her tests. The supreme court has held that the failure to request a Frye hearing results in the waiver of any objection to the qualifications or conclusions of an expert. People v. Swart, 369 Ill. App. 3d 614, 632 (2006), citing Snelson v. Kamm, 204 Ill. 2d 1 (2003).

8

After the above-quoted exchange, the prosecutor asked whether the scientist's opinion was based on "a degree of scientific certainty" rather than a reasonable degree of scientific certainty. However, defense counsel did not object to this question. Thus, the scientific certainty of the witness's opinion is not an issue before this court.

Instead, defendant claims that the admissibility of the blood samples was compromised by the lack of disinfectant. The Illinois Supreme Court has held that the State lays an adequate foundation for an object, when it identifies the object either through witnesses or a chain of custody. Woods, 214 Ill. 2d at 467. In Woods, the supreme court held that the State laid an adequate foundation for an exhibit of cocaine, by introducing evidence that an officer had seized the cocaine from defendant's van and the chemist had received the cocaine in a sealed condition, with the same inventory number assigned by the seizing officer. Woods, 214 Ill. 2d at 472-73. Similarly, in the case at bar, the State introduced evidence that the doctor had obtained the blood samples from defendant and that the forensic scientist had received the samples in a sealed condition. Thus, in the case at bar, the State had laid an adequate foundation for the blood samples obtained from the defendant.

Once the State made a prima facie showing of an adequate foundation, the defendant was required to show evidence of an actual problem that would compromise the evidence. Woods, 214 Ill. 2d at 468; Gumma v. White, 216 Ill. 2d 23, 42 (2005). The supreme court has held that requiring a defendant to "specifically object at trial" is "particularly appropriate when a defendant argues that the State failed to lay the proper foundation for the admission of evidence." Woods, 214 Ill. 2d at 470. In the case at bar, not only did the defendant fail to bring evidence of the

claimed problem to the court's attention, the defendant did not even name the problem – namely, the lack of disinfectant. The defendant's general objection of "foundation" was not sufficiently specific to preserve the issue for review. People v. Bock, 357 Ill. App. 3d 160, 170 (2005) ("[g]eneral objections" do not preserve issues for review).

When a defendant has failed to preserve an error for review, an appellate court may still review for plain error. "[T]he plain error doctrine allows a reviewing court to consider an unpreserved error when (1) a clear or obvious error occurs and the evidence is so closely balanced that the error alone threaten[s] to tip the scales of justice against the defendant, regardless of the seriousness of the error, or (2) a clear or obvious error occurs and that error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence." Piatkowski, 225 Ill. 2d at 565; Woods, 214 Ill. 2d at 471. With plain error analysis, "it is the defendant who bears the burden of persuasion with respect to prejudice." Woods, 214 Ill. 2d at 471.

Administrative Code Section

Section 1286.320 of the Illinois Administrative Code governs the procedure for blood-alcohols tests for DUI prosecutions in Illinois. 20 Ill. Adm. Code § 1286.320(c) (amended at 31 Ill. Reg. 15107, eff. October 29, 2007). The version of section 1286.320(c) which was in effect on the date of defendant's offense stated: "A disinfectant that does not contain alcohol shall be used to clean the skin where a sample is to be collected." 20 Ill. Admin Code 1286.320 (c)(2004).

Section 1286.320(c) was amended, effective July 19, 2007, to read: "The blood sample

should be drawn using proper medical technique." 31 Ill. Reg. 10188 (July 13, 2007) (emergency amendment, in effect only for 150 days); 31Ill. Reg. 15107 (November 9, 2007) (permanently amended). The Department of State Police, which is the issuing agency for this section, explained that it eliminated the disinfection requirement because: "the Department has been informed that all manufacturers' disinfectant wipes contain trace amounts of alcohol." 31 Ill. Reg. 10188 (July 13, 2007); 31 Ill. Reg. 15107 (November 9, 2007).

The doctor testified that prior to drawing defendant's blood, he read the instructions in the DUI kit. When asked why he did not disinfect the defendant's arm, he replied: "Because if you wipe her arm with alcohol, it can supposedly contaminate the specimen."

Statutory Section

The defendant does not claim that the lack of disinfectant tainted the blood sample or that the results of the blood-alcohol test were unreliable. The Department of State Police Stated that its disinfection requirement was only "[f]or the subject's well-being," and thus not for evidence collection purposes. 31 Ill. Reg. 10188 (July 13, 2007); 31 Ill. Reg. 15107 (November 9, 2007).

The defendant claims only that an Illinois statute required compliance with the Administrative Code, and the doctor failed to comply. Section 11-501.2 (625 ILCS 5/11-501.2(a)(1) (West 2004)) governs the admissibility of blood-alcohol test results in DUI prosecutions. It states that "to be considered valid," a blood-alcohol test "shall have been performed according to standards promulgated by the Department of State Police." 625 ILCS 5/11-501.2(a)(1) (West 2004). Our supreme court held that the word "shall" in this statute is mandatory. People v. Emrich, 113 Ill. 2d 343, 350 (1986) (discussing section 11-501.2 Ill. Rev.

11

Stat. 1983, ch. 95 ½, par. 11-501.2), the precursor to (section 11-501.2, 625 ILCS 5/11-501.2 (West 2004)); People v. Hamilton, 118 Ill. 2d 153, 160 (1987) ("absent compliance, test results will be considered invalid and hence inadmissible"). In Emrich, the supreme court stated unequivocally that "compliance with the standards is a prerequisite to admissibility on a DUI charge." Emrich, 113 Ill. 2d at 350.

Emrich is distinguishable from the case at bar, because the purpose of the regulation in Emrich was to ensure the valdity of the test results. Emrich, 113 Ill. 2d at 346-47.

The legislature delegated authority to the Department of State Police to promulgate "standards" for blood and other tests, for the purpose of ensuring the validity of the test results. Section 11-501.2 states:

> "Chemical analyses of the person's blood, urine, breath or other bodily substance to be considered valid under the provisions of this Section shall have been performed according to standards promulgated by the Department of State Police ***" (Emphasis Added.) 625 ILCS 5/11-501.2(a)(1) (West 2004).

The law states that "to be considered valid" the tests must have been "performed according to [the Department's] standards." 625 ILCS 5/11-501.2 (a)(1)(West 2004). Thus, the intended purpose of the standards was to ensure the tests' validity. Our supreme court has held that this section "was intended to insure reliability of evidence." Emrich, 113 Ill. 2d at 349. When the Department of State Police required disinfectant, not for the test's validity, but solely "for the subject's well-being," the department exceeded the authority delegated by the statute.

12

Administrative regulations are presumed to be valid. People v. Petco Petroleum Corp., 363 Ill. App. 3d 613, 628 (2006). However, an administrative agency has only the authority to promulgate regulations that the statute conferred. Petco, 363 Ill. App. 3d at 628; Illinois RSA No. 3 Inc. v. Department of Central Management Services, 348 Ill. App. 3d 72, 76-77 (2004). Administrative regulations are valid "only to the extent that they follow the statue." Petco, 363 Ill. App. 3d at 629, quoting Illinois RSA No. 3 Inc., 348 Ill. App. 3d at 76-77. Thus, an administrative regulation that does not follow the statute is invalid. Petco, 363 Ill. App. 3d at 628; Illinois RSA No. 3 Inc., 348 Ill. App. 3d at 76-77. To determine whether a regulation follows the statute, a court must ascertain and give effect to the legislature's intent. Petco, 363 Ill. App. 3d at 628; Illinois RSA No. 3 Inc., 348 Ill. App. 3d at 76-77.

"Our aim is to ascertain and give effect to the true intent of the legislature." Devine, 221 Ill. 2d at 617. "[T]he best evidence" of the legislature's true intent is "the language used in the statute itself." Devine, 221 Ill. 2d at 617. "[A]lthough statutory language ought to be given its plain and ordinary meaning, we construe statutes as a whole" with each phrase construed in connection with every other phrase. Devine, 221 Ill. 2d at 617. Construing the phrase "to be considered valid" with the phrase "according to standards promulgated" by the department, we find that the true intent of the legislature was for the department to promulgate standards that would ensure the validity of the tests. As our supreme court has previously held, the section's "legislative design" shows that the section's purpose was to insure that test results were "reliable." People v. Murphy, 108 Ill. 2d 228, 234 (1985). Thus, the department exceeded the authority delegated in the statute when it passed a requirement unrelated to validity of test results.

13

In the case at bar, the admission of the test results at trial was not error, despite the doctor's failure to comply with an administrative regulation, because the regulation was not valid. Where there is no error, there can be no plain error. Piatkowski, 225 Ill. 2d at 565 (plain error doctrine requires "first" that an error occurred); People v. Nicholas, 218 Ill. 2d 104, 121 (2005) (where there was no error at all, there cannot be plain error); People v. Johnson, 218 Ill. 2d 125, 139 (2005) ("Clearly, there can be no plain error if there is no error").

In addition, even if there was an error, it certainly did not rise to the level of plain error. As stated earlier, "the plain error doctrine allows a reviewing court to consider an unpreserved error when (1) a clear or obvious error occurs and the evidence is so closely balanced that the error alone threaten[s] to tip the scales of justice against the defendant, regardless of the seriousness of the error, or (2) a clear or obvious error occurs and that error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence." Piatkowski, 225 Ill. 2d at 565; Woods, 214 Ill. 2d at 471.

The claimed error does not satisfy either prong of plain error review. First, the evidence in the case at bar was not closely balanced. Both the doctor and the state trooper were still able to notice the smell of alcohol on defendant's breath, even three hours after the accident. Defendant admitted to both the doctor and the trooper that she had been drinking during the night and into the early morning. The blood-alcohol test showed that the alcohol level in her blood was 0.108 grams per decaliter. There was no evidence that the lack of disinfectant affected the reliability of the test. Thus, the evidence in the case at bar was overwhelming.

14

Second, the doctor's failure to comply with an invalid regulation is not "so serious" an error "that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process." Piatkowski, 225 Ill. 2d at 565; Woods, 214 Ill. 2d at 471.

In sum, the trial court did not err; and even if it had, the error did not rise to the level of plain error.

Claim of Ineffective Assistance of Counsel

Defendant claims that her trial counsel was ineffective for failing to file a motion in limine to exclude her blood-alcohol test results at trial, on the ground that the doctor failed to disinfect her skin prior to drawing a blood sample.

The Illinois Supreme Court has held that, to determine whether a defendant was denied his or her right to effective assistance of counsel, an appellate court must apply the two-prong test set forth in Strickland v. Washington, 466 U.S. 668, 80 L Ed. 2d 76th 104 S. Ct. 2052 (1984). People v. Colon, 225 Ill. 2d 125, 135 (2007), citing People v. Albanese, 104 Ill. 2d 504 (1984) (adopting Strickland). Under Strickland, a defendant must prove both that (1) counsel's performance was deficient, and (2) the deficient performance prejudiced the defense. Colon, 225 Ill. 2d at 135; People v. Evans, 209 Ill. 2d 194, 219-20 (2004); Strickland, 466 U.S. at 687, 80 L Ed. 2d at 693, 104 S. Ct. at 2064.

Under the first prong of the Strickland test, the defendant must prove that his counsel's performance fell below an objective standard of reasonableness "under prevailing professional norms." Colon, 225 Ill. 2d at 135; Evans, 209 Ill. 2d at 220. Under the second prong, the defendant must show that, "but for" counsel's deficient performance, there is a reasonable

15

probability that the result of the proceeding would have been different. Colon, 225 Ill. 2d at 135; Evans, 209 Ill. 2d at 220. "[A] reasonable probability that the result would have been different is a probability sufficient to undermine confidence in the outcome – or put another way, that counsel's deficient performance rendered the result of the trial unreliable or fundamentally unfair." Evans, 209 Ill. 2d at 220; Colon, 225 Ill. 2d at 135.

To prevail, the defendant must satisfy both prongs of the Strickland test. Colon, 225 Ill. 2d at 135; Lee, 209 Ill. 2d at 220. "That is, if an ineffective-assistance claim can be disposed of because the defendant suffered no prejudice, we need not determine whether counsel's performance was deficient." People v. Graham, 206 Ill. 2d 465, 476 (2003).

In the case at bar, defendant suffered no prejudice because, as discussed earlier, the motion would not have succeeded.


CONCLUSION

For the foregoing reasons, we affirm. Defendant claimed that the results of her blood-alcohol test should have been excluded because the doctor failed to swab her arm prior to drawing blood, as then required by the Illinois Administrative Code. Defendant also claimed that she received ineffective assistance of counsel because her trial counsel failed to file a motion in limine to exclude the test results.

Since defendant failed to object specifically at trial concerning the lack of disinfectant, she waived the issue for appellate review and this court reviewed only for plain error. The admission of the test results at trial was not error, despite the doctor's failure to comply with an

administrative regulation, because the regulation exceeded the issuing department's authority.

Since the claim would not have succeeded, defense counsel was not ineffective.

Affirmed.

CAHILL, P.J., and GARCIA, J., concur.