# Illinois Official Reports

## Appellate Court

> ### *People v. Weidner*, 2014 IL App (5th) 130022

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. HOWARD NEIL WEIDNER, Defendant-Appellant. |
| District & No. | Fifth District<br>Docket No. 5-13-0022 |
| Filed | March 6, 2014 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In a prosecution for aggravated driving under the influence of alcohol where defendant was transported to a hospital to have his blood drawn for the purpose of blood-alcohol analysis after the arresting officer discovered that the Breathalyzer machine at the county jail was not usable, defendant's conviction was upheld over his contention that the results of the analysis were not admissible due to the presence of alcohol in the disinfectant in the kit used in obtaining defendant's blood sample, since the record showed defendant's blood was drawn using a kit provided to the hospital by the Department of State Police, the directions included in the kit were followed, "proper medical techniques" were used, and testing by the State Police determined that the alcohol in the kit's disinfectant solution would not affect the validity of the test results. |
| Decision Under Review | Appeal from the Circuit Court of Clay County, No. 11-CF-53; the Hon. Michael D. McHaney, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on Appeal     Lou J. Viverito, of Taylor Law Offices, P.C., of Effingham, for appellant.

Marilyn Brant, State's Attorney, of Louisville (Patrick Delfino, Stephen E. Norris, and Patrick D. Daly, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Panel     JUSTICE CATES delivered the judgment of the court, with opinion. Presiding Justice Welch and Justice Stewart concurred in the judgment and opinion.

## OPINION

¶ 1 Following a stipulated bench trial, the defendant, Howard Neil Weidner, was found guilty of aggravated driving while under the influence of alcohol in violation of section 11-501(d)(1)(F) of the Illinois Vehicle Code (Code) (625 ILCS 5/11-501(d)(1)(F) (West 2010)), and he was sentenced to a three-year term of imprisonment. On appeal, the defendant contends that evidence of his blood-alcohol concentration was inadmissible at trial absent a proper foundation establishing that his blood samples were collected using "proper medical technique" as required in section 11-501.2 of the Code (625 ILCS 5/11-501.2 (West 2010)) and section 1286.320(c) of title 20 of the Illinois Administrative Code (20 Ill. Adm. Code 1286.320(c), amended at 31 Ill. Reg. 15107, 15111 (eff. Oct. 29, 2007)). We affirm.

¶ 2 On July 9, 2011, at approximately 8:15 p.m., the defendant was involved in a motor vehicle accident near the intersection of State Highway 50 and Olive Street in Clay County, Illinois. The defendant was driving his car south on Olive Street and pulled out in front of a motorcycle traveling east on Highway 50. The motorcycle struck the front quarter panel on the passenger side of the defendant's car. Ray Brooks, the motorcyclist, was thrown from the motorcycle onto the pavement upon impact. He sustained severe injuries to his head, abdomen, and pelvis. He was transported by ambulance to Clay County Hospital. He passed away a few hours later as a result of the internal injuries he sustained in the accident.

¶ 3 Officers from the Illinois State Police and the Flora police department responded to the accident scene. A state trooper interviewed the defendant at the scene. The trooper noted that the defendant had glossy, bloodshot eyes and smelled strongly of an alcoholic beverage. The trooper asked the defendant if he had been drinking. The defendant replied that he drank four or five beers while driving a four-wheeler that day. After undergoing field sobriety tests, the defendant was cited for driving under the influence of alcohol (DUI) and for failure to yield at an intersection. The trooper transported the defendant to Clay County jail for a breath test. When they arrived, the trooper discovered that the Breathalyzer machine was not usable. After consulting with superiors, the trooper transported the defendant to Clay County Hospital to have blood drawn for purposes of a blood-alcohol analysis.

¶ 4        Wayne Woods, a paramedic employed by Clay County Hospital, drew the defendant's blood in the presence of the trooper, using a DUI kit that was provided to the hospital by the Department of State Police. The blood was drawn at 10:16 p.m., about two hours after the accident, and collected in two tubes supplied in the DUI kit. The tubes were labeled, placed in a sealed package, and transported to the Illinois State Police Forensic Science Laboratory (Police Lab) for testing. The results showed that at the time the samples were collected, the defendant had a blood-alcohol concentration of 0.151 g/dL (grams per deciliter). A forensic scientist, employed by the Police Lab, calculated that the defendant's blood-alcohol concentration was between 0.171 g/dL and 0.191 g/dL at the time of the accident.

¶ 5        The defendant was charged with two counts of aggravated DUI. Count I alleged that the defendant, while his blood-alcohol concentration was 0.08 or more, and while driving a motor vehicle, was involved in a motor vehicle accident resulting in the death of Ray D. Brooks, in violation of section 11-501(a)(1) of the Code (625 ILCS 5/11-501(a)(1) (West 2010)), and that such violation was the proximate cause of Brooks's death, in violation of section 11-501(d)(1)(F), a Class 2 felony. Count II alleged that the defendant, while under the influence of alcohol, and while driving a motor vehicle, was involved in a motor vehicle accident resulting in the death of Ray D. Brooks, in violation of section 11-501(a)(2) of the Code (625 ILCS 5/11-501(a)(2) (West 2010)), and that such violation was the proximate cause of Brooks's death, in violation of section 11-501(d)(1)(F), a Class 2 felony.

¶ 6        Soon after the defendant was charged, the State discovered that the contents of the defendant's DUI kit, including the wipe used to clean the defendant's skin, had been discarded. An assistant State's Attorney went to Clay County Hospital and obtained another DUI kit (sample kit) bearing the same lot number and from the same vendor as the defendant's DUI kit. The sample kit was sent to the Police Lab so that the disinfectant in the kit could be analyzed. John Wetstein, the toxicology training coordinator for the Police Lab, conducted the analysis. Wetstein determined that the disinfectant was an iodine solution that contained ethanol at 0.006 g/dL. He also found the presence of isopropanol in the disinfectant. Wetstein concluded that the measured amounts of ethanol and isopropanol in the disinfectant were forensically insignificant and thus incapable of altering the reported blood-alcohol concentration in the defendant's blood samples.

¶ 7        The defendant filed a motion *in limine* and sought to prohibit the State from introducing evidence of his blood-alcohol concentration at his trial. The defendant argued that the results of the blood-alcohol analysis were not admissible and could not be considered valid under section 11-501.2 of the Code because the Department of State Police had not prescribed regulations for "proper medical technique," a necessary element of the foundation for admission of the results of chemical analysis, and because his blood samples had not been obtained using proper medical technique.

¶ 8        The trial court conducted an evidentiary hearing on the defendant's motion *in limine*. The defendant called Trudy Lambird, the lead lab technician at Clay County Hospital, as a witness during the hearing. Lambird testified that Clay County Hospital had a written procedure regarding the collection of blood for blood-alcohol analysis for purposes of medical treatment. She testified that the hospital's procedure states that the venipuncture site is not to be cleaned with alcohol or other volatile disinfectants. She stated that hospital technicians use baby shampoo to clean the venipuncture site. During cross-examination, Lambird testified that the

Department of State Police provides DUI kits to the hospital and that the DUI kits are used when law enforcement officers bring people to the hospital to have blood drawn for legal purposes. Lambird stated that the hospital has a procedure for the use of the DUI kits and that the procedure directs technicians to follow the instructions contained in the DUI kits.

¶ 9 The defendant also called his toxicology expert, Michael Evans. Evans testified that the National Committee on Clinical Laboratory Standards (NCCLS) adopted standards regarding proper medical technique and that NCCLS standards provide that the disinfectant used for cleaning the venipuncture site should not contain alcohol or other volatile organic substances. Evans testified that under NCCLS standards, when blood samples are collected for testing and use in legal cases, the collection process must be conducted in a manner that eliminates any doubt as to the authenticity and validity of the results. He stated that under NCCLS standards, the use of a disinfectant that contains any amount of alcohol is not a proper medical technique where a person's blood is drawn for use in legal cases. Evans opined that the technique used to collect the defendant's blood did not constitute proper medical technique under NCCLS standards. During cross-examination, Evans testified, over the defendant's objection, that the use of a disinfectant with an alcohol concentration of 0.006 g/dL would not have affected the results of the defendant's blood-alcohol test. He could not state that the results of the defendant's blood-alcohol analysis were reliable because NCCLS standards were not followed.

¶ 10 The State called Wayne Woods as a witness. Woods testified that he used a DUI kit provided by the Department of State Police to draw the defendant's blood and that he followed the instructions in that kit. Woods testified that it was hospital policy to use the DUI kit.

¶ 11 The State also called John Wetstein as a witness. Wetstein testified that he analyzed the disinfectant in the sample DUI kit and found that it had an alcohol concentration of 0.006 grams per deciliter. His analysis also revealed the presence of isopropanol in the disinfectant. Wetstein opined that the use of a disinfecting wipe with an alcohol concentration of 0.006 g/dL would have had no impact on the results of the defendant's blood-alcohol analysis. He explained that the alcohol concentration of 0.006 g/dL would actually serve to dilute a blood-alcohol concentration greater than 0.006 g/dL. Wetstein testified that in 2007, he was asked to test the disinfectant wipes in five different DUI kits supplied by vendors who had contracts with the Department of State Police. He discovered that the disinfectant in each kit had an alcohol concentration of 0.005 g/dL. Wetstein opined that the use of a disinfecting wipe with an alcohol concentration of 0.005 g/dL would have had a forensically insignificant impact on the defendant's blood-alcohol concentration. During cross-examination, Wetstein acknowledged that the defendant's DUI kit was discarded and that the alcohol content of the disinfectant in that kit was unknown.

¶ 12 After considering the testimony and the arguments of counsel, the trial court denied the defendant's motion *in limine*. The defendant filed a motion to reconsider and argued that he had presented a *prima facie* case establishing that proper medical technique had not been used in collecting his blood samples. The defendant's motion to reconsider was denied.

¶ 13 The defendant voluntarily waived his right to a trial by jury on count I of the second amended information. The case proceeded to a stipulated bench trial. The defendant and the State stipulated to the testimony and the evidence that the State would present at trial to prove the elements of count I. The parties also stipulated that the defendant's objections to the

admissibility of the blood-alcohol concentration evidence had been preserved for appeal. After considering the stipulated evidence, the trial court found that the defendant was guilty of aggravated DUI as alleged in count I. Count II was dismissed on the State's motion. The defendant's motion for judgment of acquittal was denied. This appeal followed.

¶ 14 On appeal, the defendant contends that the evidence of his blood-alcohol concentration was inadmissible at trial absent a proper foundation establishing that his blood samples were collected using "proper medical technique" as required in section 11-501.2 of the Code and section 1286.320(c) of title 20 of the Illinois Administrative Code. The defendant claims that the standard, promulgated by the Department of State Police, provides no guidance as to what constitutes "proper medical technique." He also claims that he presented unrebutted expert opinion that the use of a disinfectant containing any amount of alcohol is improper medical technique when a subject's blood is being drawn for forensic analysis and that proper medical technique was not utilized in collecting his blood. The defendant concludes that the failure to employ "proper medical technique" in compliance with the requirements in the statute and the administrative code rendered the results of his blood-alcohol analysis inadmissible at trial, without regard for whether the failure to comply compromised the accuracy of the test results.

¶ 15 Section 11-501.2 of the Code governs the admissibility of the results of blood-alcohol tests in DUI prosecutions. 625 ILCS 5/11-501.2 (West 2010); *People v. Emrich*, 113 Ill. 2d 343, 349, 498 N.E.2d 1140, 1142 (1986). Section 11-501.2(a)(1) provides, in pertinent part, that in order for the chemical analysis of a person's blood to be considered valid under the provisions of this section, the analysis shall have been performed according to standards promulgated by the Department of State Police. 625 ILCS 5/11-501.2(a)(1) (West 2010). Thus, the legislature delegated to the Department of State Police the authority to promulgate standards for the collection of blood and other bodily substances to ensure the validity of the analyses of those substances. 625 ILCS 5/11-501.2(a)(1) (West 2010).

¶ 16 The standards promulgated by the Department of State Police are found in title 20 of the Illinois Administrative Code. See 20 Ill. Adm. Code 1286.320, amended at 31 Ill. Reg. 15107, 15111 (eff. Oct. 29, 2007). Section 1286.320 was amended in 2007 (31 Ill. Reg. 15107, 15111 (eff. Oct. 29, 2007)), and the amended version was in effect on the date of the defendant's offense. The version of section 1286.320 that is applicable here requires that a subject's blood be drawn by a certified professional, that the blood be collected in the presence of the arresting officer or another officer, and that the blood samples be collected using a DUI kit provided by the Department of State Police, if possible. 20 Ill. Adm. Code 1286.320, amended at 31 Ill. Reg. 15107, 15111 (eff. Oct. 29, 2007). Section 1286.320(c), as amended, states that the blood sample "should be drawn using proper medical technique." 20 Ill. Adm. Code 1286.320(c), amended at 31 Ill. Reg. 15107, 15111 (eff. Oct. 29, 2007). The prior version of section 1286.320(c) stated that "[a] disinfectant that does not contain alcohol shall be used to clean the skin where a sample is to be collected." 28 Ill. Reg. 10017, 10039 (eff. June 30, 2004).

¶ 17 The reasons for the 2007 amendments were published in a notice in the Illinois Register and are set forth below:

"The current collection procedure used to obtain a blood sample from a subject to determine the alcohol concentration or presence of other drugs or intoxicating compounds is conducted by licensed medical personnel within established medical protocols. For the subject's well-being, the protocol requires disinfecting the skin prior

to drawing blood. The Department has been provided test results which indicate the disinfectant wipes provided with the blood collection kits supplied by its vendor contain trace amounts of alcohol. Upon inquiry, the Department has been informed that all manufacturers' disinfectant wipes contain trace amounts of alcohol. Review of independent scientific literature indicates use of disinfectants containing alcohol at this minute quantity prior to a blood draw has no effect on the subsequent analytical results of the specimen. These rules were verified by the Department's own scientific analysis. The current administrative rule prohibits use of a disinfectant containing any amount of alcohol. The current rule, when applied to the disinfectants currently provided, has no scientific basis and should be amended." 31 Ill. Reg. 15107, 15108 (Oct. 29, 2007).

This notice shows that the Department of State Police, in keeping with its delegated responsibilities, conducted testing and determined that the concentration of alcohol contained in the disinfectant solution in the DUI kits supplied by its vendors would not affect the validity of the results of blood-alcohol tests before it moved to eliminate the requirement that an alcohol-free disinfectant be used to clean a person's skin prior to drawing blood and to substitute a requirement that the blood be collected using proper medical technique. *People v. Bair*, 379 Ill. App. 3d 51, 59, 884 N.E.2d 184, 192 (2008).

¶ 18    In this case, the evidence shows that the defendant's blood was drawn by a certified paramedic in the presence of the arresting state trooper. The paramedic testified that he used a DUI kit that was provided by the Department of State Police, that the DUI kit contained specific directions for the collection of the blood samples, and that he followed the instructions for cleaning the venipuncture site, drawing the defendant's blood, and packaging and labeling the defendant's samples. We find that an adequate foundation was laid to show that the defendant's blood samples were collected using "proper medical technique," as promulgated by the Department of State Police in accordance with section 11-501.2 of the Code and the procedures set forth in section 1286.320 of title 20 of the Illinois Administrative Code. On this record, the trial court did not err in finding that the evidence of the defendant's blood-alcohol concentration was admissible at trial. We note that the issue before the trial court was the admissibility of the evidence, and its ruling of admissibility would not have prevented the defendant from challenging the accuracy of and the weight to be accorded to the State's evidence regarding the propriety of the collection technique, the lab analyses, and the results, or presenting his own evidence as to those factual matters.

¶ 19    Accordingly, the judgment of the circuit court is affirmed.

¶ 20    Affirmed.