NOTICE

Decision filed 08/06/10, corrected
08/27/10. The text of this decision
may be changed or corrected prior to
the filing of a Petition for Rehearing or
the disposition of the same.

NO. 5-09-0327

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

THE PEOPLE OF THE STATE OF ILLINOIS, ) Appeal from the
                                       ) Circuit Court of
     Plaintiff-Appellee,              ) Franklin County.
                                       )
v.                                     ) No. 07-CF-32
                                       )
WILLIAM D. SPRIND, JR.,                ) Honorable
                                       ) E. Kyle Vantrease,
     Defendant-Appellant.             ) Judge, presiding.

_____

JUSTICE WELCH delivered the opinion of the court:

Following a bench trial, the defendant, William D. Sprind, Jr., was found guilty of four counts of aggravated driving under the influence of alcohol, other drug or drugs, or intoxicating compound or compounds, or any combination thereof, in violation of section 11-501(d) of the Illinois Vehicle Code (625 ILCS 5/11-501(d) (West 2008)), and one count of reckless homicide, in violation of section 9-3(a) of the Criminal Code of 1961 (720 ILCS 5/9-3(a) (West 2008)). The circuit court of Franklin County sentenced the defendant to a 14-year term of imprisonment. On appeal the defendant raises the following issues: (1) whether the defendant received ineffective assistance at the trial and (2) whether the amendment of sections 1286.320(c) and 1286.330(b) of Title 20 of the Illinois Administrative Code (Administrative Code) (20 Ill. Adm. Code §1286.320(c), amended at 31 Ill. Reg. 15107, 15111, eff. October 29, 2007; 20 Ill. Adm. Code §1286.330(b), amended at 31 Ill. Reg. 7305, 7321, eff. May 1, 2007) constitute *ex post facto* laws in violation of the United States and Illinois Constitutions. For the following reasons, we affirm.

On January 23, 2007, the defendant was driving his truck northbound on Illinois Route

1

37 at a high rate of speed, passing onto the shoulder and into the oncoming southbound traffic lane. The defendant attempted to pass several vehicles and ran directly into the vehicle of the victims, Troy and Myrtle Holt. As a result of the collision, Mrs. Holt died. Mr. Holt was unconscious for three weeks, on a ventilator for six weeks, hospitalized for months, and then placed in a nursing home. The defendant was also injured in the collision. At the hospital, a nurse, in the presence of Illinois State Trooper Robert Reynolds, obtained a urine specimen from the defendant. Another nurse, also in Trooper Reynolds' presence, swabbed the defendant's arm and drew blood. The blood and urine tests revealed that the defendant had levels of cocaine high enough to be fatal. He also had cannabis and numerous prescription medications in his system.

On October 5, 2007, defense counsel filed a motion *in limine* to prevent the results of the urine sample from being introduced into evidence. Defense counsel argued that at the time of the offense and when the urine sample was taken, section 1286.330(b) of Title 20 of the Administrative Code (20 Ill. Adm. Code §1286.330(b), amended at 28 Ill. Reg. 10017, 10040, eff. June 30, 2004) set forth procedures that provided that the urine sample may be collected only by the arresting officer, another law enforcement officer, or an agency employee. Defense counsel noted that a nurse, and not an authorized person, took the urine sample. Therefore, defense counsel argued that the police failed to comply with the Administrative Code provision in effect at the time the urine sample was taken. Defense counsel noted that effective May 1, 2007, section 1286.330 had been amended to add hospital nurses to the list of those who are authorized to take urine samples.

On November 15, 2007, defense counsel filed a motion to suppress the results of the blood test. Defense counsel noted that at the time of the collision, section 1286.320(c) of Title 20 of the Administrative Code (20 Ill. Adm. Code §1286.320(c), amended at 28 Ill. Reg. 10017, 10039, eff. June 30, 2004), regarding blood draws, stated, "A disinfectant that

does not contain alcohol shall be used to clean the skin where a sample is to be collected." Defense counsel argued that the blood-test kit violated procedure because the nurse had used a swab that contained alcohol to cleanse the defendant's skin. Accordingly, defense counsel argued that the results of the blood draw should be inadmissible. Shortly after the collision, effective October 29, 2007, section 1286.320(c) was amended to read, "The blood sample should be drawn using proper medical technique." 20 Ill. Adm. Code §1286.320(c), amended at 31 Ill. Reg. 15107, 15111, eff. October 29, 2007.

A hearing was held on the motion to suppress and the motion *in limine* on May 16, 2008, and the trial court entered a written order on June 12, 2008, denying the motion to suppress and the motion *in limine*. As to the urine sample, the court noted that the regulations required the police officer to be able to authenticate the sample. Because Trooper Reynolds was present when the nurse drew the sample, he was able to authenticate the sample pursuant to the regulations. Moreover, the trial court held the amendment of section 1286.330(b) to be procedural rather than substantive and concluded that the regulations could be applied retroactively. As to the blood sample, the court noted that the defendant had not argued that the sample was tainted or that the results were invalid. The court then noted that the regulation had recently been found invalid and noted that the results could not be inadmissible for a failure to comply with an invalid regulation. Furthermore, the trial court held that the amendment of section 1286.320(c) was procedural rather than substantive and found that the current regulation could be applied retroactively.

Thereafter, the defendant suffered a stroke on September 22, 2008. As a result, defense counsel filed a motion for a fitness examination on September 30, 2008. A week later on October 6, 2008, the defendant had recovered enough to be present in court at a pretrial conference. On November 3, 2008, defense counsel withdrew his motion for a fitness examination. Defense counsel noted that the motion had been based solely on the

3

stroke. He also noted that the defendant was going to have a neurological examination: "[It will] basically tell us most of what we need to know about whether or not I am going to re[]file a motion for fitness." Defense counsel stated further, "When I have the results of that, then we will contemplate either filing or not filing a future motion." The trial court noted that up to that point the defendant had not raised a *bona fide* doubt regarding his fitness to stand trial.

On January 16, 2009, the defendant waived his right to a jury trial. The trial court noted that defense counsel had previously raised the issue of the defendant's fitness to stand trial but had withdrawn it. Defense counsel stated, "[A]t this present time we are not raising that issue, and we don't anticipate it, and[–]assuming there is [*sic*] no new medical developments." The trial court noted, "[F]rom my observation of Mr. Sprind, he also appears to be fully aware of what is occurring today and appears to be fit to stand trial."

A stipulated bench trial was held on January 29, 2009. Evidence presented at the trial included seven drivers who had witnessed the defendant driving at a high rate of speed, erratically all over the road, and attempting to pass numerous vehicles before striking the victims' vehicle head-on.

Duke Dixon would have testified that he was an employee of Mercy Regional working as an emergency medical technician (EMT). On January 23, 2007, he responded to a crash on Illinois Route 37 north of West Frankfort. He provided treatment to the defendant, and in the course of the treatment he had to cut the defendant's pants, and a number of white pills fell from the left pocket of the defendant's pants. He collected these pills with a rubber glove and handed them to Trooper Reynolds.

Kim Bauser would have testified that she was an EMT and a phlebotomist employed by Good Samaritan Hospital in Mount Vernon, Illinois. She worked on January 23, 2007, and assisted Trooper Reynolds to secure blood samples from the defendant. She collected

4

two vials of blood from the defendant, using vials contained in the Illinois State Police DUI kit. She would have further testified that the blood drawn from the defendant was drawn using proper medical technique, that the blood was drawn in the presence of Trooper Reynolds, and that the vials were handed to Trooper Reynolds when they were filled.

Kristina Lorenzini would have testified that she was a registered nurse employed by Good Samaritan Hospital in Mount Vernon, Illinois. She worked on January 23, 2007, and she was the attending nurse to the defendant while he was in the emergency room. She assisted Trooper Reynolds in collecting a urine sample from the defendant. The urine sample was collected in a new, plastic urinal, in the presence of Trooper Reynolds, and was immediately handed to Trooper Reynolds. She would have also testified that while attending to the defendant, she discovered a Vicodin pill lying next to the defendant's right side. She gave this pill to Trooper Reynolds.

Illinois State Police Trooper Reynolds would have testified that he was dispatched to a two-car accident on Illinois Route 37, north of West Frankfort, on January 23, 2007. While on the scene, he spoke to witnesses and collected 17½ pills from EMT Duke Dixon. He would also have testified that he had Kim Bauser and Kristina Lorenzini assist him in collecting the blood and urine samples from the defendant. He would have testified that these samples were properly sealed, labeled, and secured in the DUI kit. He would have also testified that Kristina Lorenzini gave him one white pill and that he located three more of those pills in the right front pocket of the defendant's pants.

Illinois State Police Special Agent Farrin Melton would have testified that he had interviewed the defendant in the hospital shortly after the crash. The defendant admitted to taking one Vicodin pill earlier that morning. The defendant claimed that he had not taken any other legal or illegal drugs or alcohol. He would further testify that the defendant had told him that the victims' vehicle swerved into his lane, causing the collision.

5

Dr. Kok would have testified that she is a forensic scientist working in the Illinois State Police crime lab, toxicology section. She had performed the analysis of the blood and urine samples. At this point, defense counsel renewed his objection to the admittance into evidence of the blood and urine samples. The trial court overruled the objection in accordance with the previous rulings on the motion to suppress and the motion *in limine*. Dr. Kok would have testified that the tests of the defendant's urine revealed cocaine, THC, lidocaine, diazepam, nordiazepam, temazepam, oxazepam, morphine, oxycodone, methylphenidate, and cyclobenzaprine. Tests of the defendant's blood revealed cocaine, benzoylecgonine, oxycodone, diazepam, and nordiazepam.

Expert pharmacologist Dr. William Kolling would have testified that the diazepam, nordiazepam, oxazepam, temazepam, morphine, oxycodone, and cyclobenzaprine all depress the central nervous system, which would impair one's ability to drive a vehicle. Cocaine, cocaine metabolites, lidocaine, and methylphenidate were all central nervous system stimulants, which could also impair one's ability to operate a motor vehicle. Dr. Kolling would have testified that the blood test was consistent with such a large dose of cocaine that people have died from ingesting that amount. The oxycodone level was 4½ times the recommended level, and the diazepam level was 2 to 3 times higher than the level normally used by patients. Dr. Kolling would have opined that these levels would impair judgment and driving ability, cause blurred vision, affect coordination, and cause lightheadedness, paranoia, and a lack of judgment. He would have finally concluded that the defendant was impaired while operating his vehicle at the time of the fatal collision.

At the conclusion of the bench trial, the trial court found the defendant guilty on all the counts. The trial court found the defendant's medical condition to be the only factor in mitigation but noted that the condition was "self-inflicted." On March 16, 2009, the defendant was sentenced to a 14-year term of imprisonment. On April 15, 2009, the

6

defendant filed a motion for a new trial or in the alternative for a new sentencing hearing, raising the question of the propriety of the admission of the urine and blood samples into evidence. The trial court denied the defendant's motion for a new trial or a new sentencing hearing on June 15, 2009. The defendant filed a timely notice of appeal on June 29, 2009.

On appeal, the defendant first argues that he was denied the effective assistance of counsel because his counsel failed to obtain a fitness hearing before the trial and his counsel agreed to stipulate to the testimony that the State would present at the trial. The standard of review for assessing ineffective-assistance-of-counsel claims is set out in the two-pronged test enunciated in *Strickland v. Washington*, 466 U.S. 668, 687, 80 L. Ed. 2d 674, 693, 104 S. Ct. 2052, 2064 (1984). Under the first prong in *Strickland*, the defendant must show that counsel's performance was deficient in that it fell below an objective standard of reasonableness. *People v. Evans*, 209 Ill. 2d 194, 219-20 (2004). The defendant must overcome a strong presumption that, under the circumstances, counsel's conduct might be considered sound trial strategy. *People v. Peeples*, 205 Ill. 2d 480, 512 (2002). With regard to the second prong, the defendant must show that he suffered prejudice in that but for counsel's deficient performance, there was a reasonable probability that the result of the proceeding would have been different. *Evans*, 209 Ill. 2d at 219-20. In order to prevail on a claim of ineffective assistance of counsel, a defendant must satisfy both prongs of *Strickland*. *Evans*, 209 Ill. 2d at 220.

We first address the defendant's argument that he received ineffective assistance of counsel because counsel failed to seek a fitness hearing prior to the trial. For a defendant to establish that the failure to request a fitness hearing prejudiced him within the meaning of *Strickland*, the defendant must show that facts existed at the trial that would have raised a *bona fide* doubt of the defendant's ability " 'to understand the nature and purpose of the proceedings against him or to assist in his defense.' " *People v. Harris*, 206 Ill. 2d 293, 304

7

(2002) (quoting 725 ILCS 5/104-10 (West 1998)). " 'Defendant is entitled to relief *** only if he shows that the trial court would have found a *bona fide* doubt of his fitness and ordered a fitness hearing if it had been apprised of the evidence now offered.' " *Harris*, 206 Ill. 2d at 304 (quoting *People v. Easley*, 192 Ill. 2d 307, 319 (2000)). To determine whether there exists a *bona fide* doubt of the defendant's fitness, a court may consider the defendant's irrational behavior, the defendant's demeanor at the trial, and any prior medical opinion on the defendant's competence. *Harris*, 206 Ill. 2d at 304.

The defendant claims that he was "heavily medicated for depression and anxiety" and was "on a cocktail of anti[]depressants, including Lexapro, Ativan[,] and Romazicon." The defendant further claims that these drugs often make an individual lethargic and slow in comprehension. He claims that he was particularly disoriented on a particular day, approximately three months before the trial, and that he was "so disoriented and combative, he had to be restrained and administered Haldol, a powerful anti[]psychotic drug." The defendant also claims that hospital notes reflect that he was having difficultly with memory and recollection and might want a psychiatric evaluation.

In response, the State notes that the defendant's brief does not contain a single citation to the record in support of his claims, in violation of Supreme Court Rule 341(h)(7) (210 Ill. 2d R. 341(h)(7)), which mandates that the parties to an appeal shall make their argument "with citation of the authorities and the pages of the record relied on." The failure to provide proper citations to the record is a violation of this rule, the consequence of which is the forfeiture of the argument lacking those citations. *Engle v. Foley & Lardner, LLP*, 393 Ill. App. 3d 838, 854 (2009).

In any event, the record does not establish that the defendant was "heavily medicated" for depression or that he suffered from anxiety and that the medications caused lethargy or slow comprehension. What the record does reveal is that the defendant suffered a mild

8

stroke on September 22, 2008. As a result, on September 30, 2008, defense counsel filed a motion for a fitness examination. A week later on October 6, 2008, the defendant had recovered enough to be present in court at a pretrial conference. A month later, on November 3, 2008, defense counsel withdrew his motion for a fitness examination. Defense counsel noted that the motion had been based solely on the stroke. The trial court noted that up to that point the defendant had not raised a *bona fide* doubt regarding the defendant's fitness to stand trial. On January 16, 2009, during the hearing at which the defendant waived his right to a jury trial, the trial court noted that defense counsel had previously raised the issue of the defendant's fitness to stand trial but had withdrawn it. Defense counsel stated, "[A]t this present time we are not raising that issue, and we don't anticipate it, and[–]assuming there is [*sic*] no new medical developments." The trial court noted, "[F]rom my observation of Mr. Sprind, he also appears to be fully aware of what is occurring today and appears to be fit to stand trial." Accordingly, the trial court found that the defendant had not established a *bona fide* doubt regarding his fitness to stand trial, and we cannot conclude that defense counsel was ineffective for failing to request a fitness examination.

We next address the defendant's argument that defense counsel's decision to stipulate to the facts at the bench trial resulted in the ineffective assistance of counsel. The defendant compares defense counsel's decision to agree to a stipulated bench trial to a defense counsel's actions admitting guilt in his opening statement to a jury. Again, the defendant's brief fails to include any citations to the record to support his argument, in violation of Supreme Court Rule 341(h)(7).

In any event, the record reveals that, contrary to the defendant's claims, defense counsel did not concede his client's guilt. Defense counsel merely stipulated to the existence of the State's evidence. Defense counsel specifically stated at the beginning of the bench trial: "[W]e are not stipulating that the evidence is sufficient to prove the defendant's guilt,

9

and we're not admitting guilt. We are simply waiving the obligation of the State to present evidence through testimonial means." Accordingly, the trial court was still required to find that the evidence was sufficient to prove the defendant guilty beyond a reasonable doubt. See *People v. Sutton*, 229 Ill. App. 3d 960, 968 (1992). Furthermore, defense counsel preserved the defendant's objection to the admittance of the blood and urine samples into evidence during the stipulated bench trial. Accordingly, we cannot conclude that defense counsel was ineffective under these circumstances.

We turn now to the defendant's next argument on appeal. The defendant argues that the trial court improperly denied his motion *in limine* and his motion to suppress because the amendments to section 1286.320 and section 1286.330 of Title 20 of the Administrative Code, as applied retroactively, constitute *ex post facto* laws in violation of the United States and Illinois Constitutions. The defendant also argues that compliance with the regulations established pursuant to section 11-501.2 of the Illinois Vehicle Code (625 ILCS 5/11-501.2 (West 2008)) is a prerequisite to the admissibility of the test results in a DUI prosecution. He contends that because the police failed to comply with the regulations, the results of the blood and urine tests were inadmissible.

In response, the State argues that the amendments in the Administrative Code were procedural, the prior versions of the Administrative Code were invalid, and there was substantial compliance with the regulations. The State relies on *People v. Morris*, 394 Ill. App. 3d 678, 679 (2009), a similar case in which the defendant filed a motion *in limine* to bar evidence of a blood test, arguing that the disinfecting swab in the DUI kit used to draw his blood contained low levels of alcohol, in violation of the version of section 1286.320(c) of Title 20 of the Administrative Code in effect at the time of his arrest and the drawing of his blood. At that time section 1286.320(c) stated, " 'A disinfectant that does not contain alcohol shall be used to clean the skin where a sample [of blood] is to be collected.' " *Morris*,

394 Ill. App. 3d at 679 (quoting 20 Ill. Adm. Code §1286.320(c), amended at 28 Ill. Reg. 10039, eff. June 30, 2004). The Administrative Code was later amended to read, " 'The blood sample should be drawn using proper medical technique.' " *Morris*, 394 Ill. App. 3d at 680 (quoting 20 Ill. Adm. Code §1286.320(c), amended at 31 Ill. Reg. 10192, eff. July 9, 2007 (emergency amendment, in effect for a maximum of 150 days), and 31 Ill. Reg. 15111, eff. October 29, 2007). The trial court initially denied the defendant's motion *in limine*, and the defendant filed a motion to reconsider; the trial court granted the motion to reconsider and barred the results of the blood test from being introduced into evidence. *Morris*, 394 Ill. App. 3d at 680. The court on review noted that both the United States Constitution and the Illinois Constitution prohibit the imposition of *ex post facto* laws. *Morris*, 394 Ill. App. 3d at 680. A law is retroactive if it applies to events that occurred before the law was enacted. *Morris*, 394 Ill. App. 3d at 680. A law is disadvantageous to the defendant if it (1) criminalizes an act that was innocent when done, (2) increases the punishment for an offense previously committed, or (3) alters the rules of evidence to make a conviction easier, by making " ' "substantive change[s] in the evidence needed to convict for the particular crime in question." ' " *Morris*, 394 Ill. App. 3d at 680 (quoting *People v. Kotecki*, 279 Ill. App. 3d 1006, 1011 (quoting *People v. Dorff*, 77 Ill. App. 3d 882, 885 (1979))). The court noted, "The *ex post facto* clause, however, does not limit the legislature's control of remedies or modes of procedure if they do not affect matters of substance; an amendment that affects only procedural matters and not substantive rights will be applied retroactively as well as prospectively." *Morris*, 394 Ill. App. 3d at 680-81. Quoting the United States Supreme Court, the court noted as follows: " '[W]e cannot perceive any ground upon which to hold a statute to be *ex post facto* which does nothing more than admit evidence of a particular kind in a criminal case upon an issue of fact which was not admissible under the rules of evidence as enforced by judicial decisions at the time the offence was committed.' " *Morris*, 394 Ill.

App. 3d at 681 (quoting *Thompson v. Missouri*, 171 U.S. 380, 387, 43 L. Ed. 204, 207, 18 S. Ct. 922, 924 (1898)).

The court then concluded, "The amended rule in this case did not criminalize an act that was innocent when done or increase the punishment upon conviction." *Morris*, 394 Ill. App. 3d at 681. Moreover, the court disagreed with the defendant's argument that the amendment made a conviction easier by lessening the State's burden of proof and removing a defense to the charge or that the rule change affected substantive rights, not just procedure. *Morris*, 394 Ill. App. 3d at 681. The court noted that the State was still required to prove that the defendant drove or was in physical control of a vehicle while under the influence of alcohol or while the alcohol concentration in his blood or breath was 0.08 or more: "The elements of the charge and the burden of proof are the same. All that has changed is that a piece of evidence that may have been inadmissible under the preamendment regulation is now admissible. *** The jury still has the right to determine the sufficiency or effect of the now-admissible evidence." *Morris*, 394 Ill. App. 3d at 682. The court held that the amended regulation affected procedure, not substantive rights, and should have been applied retroactively. *Morris*, 394 Ill. App. 3d at 682. Accordingly, the court held that the trial court erred in its conclusion that the amendment constituted an *ex post facto* law and in granting, on reconsideration, the defendant's motion *in limine*. *Morris*, 394 Ill. App. 3d at 682.

In the instant case, the defendant challenged precisely the same section of the Administrative Code on precisely the same basis. Moreover, the logic of the decision in *Morris* is also applicable to the amendment of section 1286.330(b) of Title 20 of the Administrative Code (20 Ill. Adm. Code §1286.330(b), amended at 28 Ill. Reg. 10040, eff. June 30, 2004), which set forth procedures that the "urine sample may be collected by the arresting officer, another law enforcement officer, or an agency employee." At the time of the defendant's trial, section 1286.330(b) had been amended to include hospital nurses. As

was said in *Morris* concerning section 1286.320(c), "[A]mending the rule 'does nothing more than admit evidence of a particular kind in a criminal case upon an issue of fact which was not admissible under the rules of evidence as enforced by judicial decisions at the time the offence was committed.' " *Morris*, 394 Ill. App. 3d at 681 (quoting *Thompson*, 171 U.S. at 387, 43 L. Ed. at 207, 18 S. Ct. at 924). Like the amendment to section 1286.320(c) involved in *Morris*, the amendment to section 1286.330(b), "by definition, is procedural, not substantive" (*Morris*, 394 Ill. App. 3d at 682). Accordingly, the reasoning in *Morris* leads to the conclusion that the trial court's ruling allowing the results of the blood and urine samples to be admitted into evidence was proper.

The State further argues that the preamended section 1286.320 (20 Ill. Adm. Code §1286.320, amended at 28 Ill. Reg. 10039, eff. June 30, 2004), dealing with blood draws, was invalid at the time of the offense. In *People v. Bair*, 379 Ill. App. 3d 51, 52 (2008), the defendant claimed error because his skin had not been disinfected as required by section 1286.320(c). The court noted that the version of the Administrative Code in effect at the date of the offense stated, " 'A disinfectant that does not contain alcohol shall be used to clean the skin where a sample is to be collected.' " *Bair*, 379 Ill. App. 3d at 58 (quoting 20 Ill. Adm. Code §1286.320(c), amended at 28 Ill. Reg. 10039, eff. June 30, 2004). However, the Administrative Code was later amended to read, " 'The blood sample should be drawn using proper medical technique.' " *Bair*, 379 Ill. App. 3d at 58 (quoting 20 Ill. Adm. Code §1286.320(c), amended at 31 Ill. Reg. 10192, eff. July 9, 2007 (emergency amendment, in effect for a maximum of 150 days), and 31 Ill. Reg. 15111, eff. October 29, 2007). The Department of State Police (Department), which is the issuing agency for this section, explained that it had eliminated the disinfection requirement because the Department had been informed that all manufacturers' disinfectant wipes contain a trace amount of alcohol. *Bair*, 379 Ill. App. 3d at 58. The Department further stated that its disinfection requirement

13

was for the subject's well-being and not for evidence-collection purposes. *Bair*, 379 Ill. App. 3d at 58. On appeal, the defendant claimed that section 11-501.2 required compliance with the Administrative Code and that the doctor failed to comply. *Bair*, 379 Ill. App. 3d at 58. The court noted that the supreme court had found that " 'compliance with the standards is a prerequisite to admissibility on a DUI charge.' " *Bair*, 379 Ill. App. 3d at 58 (quoting *People v. Emrich*, 113 Ill. 2d 343, 350 (1986)). The court found *Emrich* distinguishable from that case because the purpose of the regulation in *Emrich* was to ensure the validity of the test results, whereas the Department stated that its disinfection requirement was only for the subject's well-being and not for evidence-collecting purposes. *Bair*, 379 Ill. App. 3d at 58-59. The court pointed out as follows:

> "The legislature delegated authority to the Department of State Police to promulgate 'standards' for blood and other tests, for the purpose of ensuring the validity of the test results. *** The law states that 'to be considered valid' the tests must have been 'performed according to [the Department's] standards.' 625 ILCS 5/11-501.2(a)(1) (West 2004). Thus, the intended purpose of the standards was to ensure the tests' validity. *** When the Department of State Police required disinfectant, not for the test's validity, but solely 'for the subject's well-being,' the Department exceeded the authority delegated by the statute." *Bair*, 379 Ill. App. 3d at 59.

Accordingly, the court found that the admission of the test results was not error, despite noncompliance with an administrative regulation, because the regulation was not valid. *Bair*, 379 Ill. App. 3d at 59.

Applying the logic in *Bair* to the instant case, we agree with the State that section 1286.320(c), regarding disinfecting skin prior to a blood draw, was invalid at the time that the defendant's blood was drawn. The State also asserts that the logic in *Bair* can be

14

extended to the urine sample. The urine sample cannot have been more reliable if it was taken by a police officer rather than a nurse whose medical training far exceeded that of the police officer, especially if the officer was present to observe and authenticate the sample. The requirement of having a police officer instead of medical personnel obtain the urine cannot be to ensure the validity of the tests. Since this regulation also exceeds the authority delegated in the statute, the failure to comply with the Administrative Code cannot have been error.

In any event, the State asserts that there was substantial compliance with the Administrative Code. See *People v. Bishop*, 354 Ill. App. 3d 549, 555 (2004). Trooper Reynolds was present during both the blood draw and the urine draw and was able to authenticate the samples. Furthermore, the alleged deviation did not affect the reliability of the test results, nor did the alleged deviation prejudice the defendant. The fact that a nurse collected the sample instead of a police officer cannot have affected the result or prejudiced the defendant.

For the foregoing reasons, we hereby affirm the judgment entered by the circuit court of Franklin County.


Affirmed.


DONOVAN and SPOMER, JJ., concur.

NO. 5-09-0327

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

| | |
|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, ) | Appeal from the |
| ) | Circuit Court of |
| Plaintiff-Appellee, ) | Franklin County. |
| ) | |
| v. ) | No. 07-CF-32 |
| ) | |
| WILLIAM D. SPRIND, JR., ) | Honorable |
| ) | E. Kyle Vantrease, |
| Defendant-Appellant. ) | Judge, presiding. |

**Opinion Filed**:  August 6, 2010

**Justices**:  Honorable Thomas M. Welch, J.,

Honorable James K. Donovan, J., and
Honorable Stephen L. Spomer, J.,
Concur

**Attorneys for Appellant**  Bryan A. Drew, Daniel K. Cockrum, Drew & Drew, P.C., 905 West Washington, Benton, IL 62812

**Attorneys for Appellee**  Hon. Tom Dinn, State's Attorney, Franklin County Courthouse, 202 West Main, Benton, IL 62812; Patrick Delfino, Director, Stephen E. Norris, Deputy Director, Sharon Shanahan, Staff Attorney, Office of the State's Attorneys Appellate Prosecutor, Fifth District Office, 730 E. Illinois Highway 15, Suite 2, P.O. Box 2249, Mt. Vernon, IL 62864