2020 IL App (1st) 192247-U

FIRST DIVISION
December 21, 2020

No. 1-19-2247

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

| | | |
|---|---|---|
| MARTIN S. SEGAL; KALCHEIM HABER, LLC; and GUARDIAN FIRE ADJUSTERS, INC., | ) ) ) | |
| Plaintiffs-Appellants, | ) ) | Appeal from the Circuit Court of Cook County |
| v. | ) ) ) | No. 16 CH 1681 |
| WELLS FARGO BANK, N.A., Successor by Merger to Wachovia Bank, N.A.; PNC BANK, N.A.; and ROBIN L. SEGAL, | ) ) ) ) | The Honorable Sophia H. Hall, Judge Presiding. |
| Defendants | ) ) | |
| (Robin L. Segal, Defendant-Appellee). | ) | |

JUSTICE PIERCE delivered the judgment of the court.
Presiding Justice Walker and Justice Hyman concurred in the judgment.

**ORDER**

¶ 1  *Held:* The judgment of the circuit court is affirmed. The circuit court correctly found that Robin was a borrower for the purposes of the insurance policy. Plaintiffs failed to allege any claim in their operative complaint that Robin was required to participate in the insurance claim, and therefore the issue of whether the property was vacant was not properly before the circuit court during the summary judgment proceedings. The circuit court correctly concluded that Kalcheim was not entitled to attorney fees under the common fund doctrine.

¶ 2 This appeal involves a declaratory judgment action to determine who is entitled to what share (if any) of insurance proceeds paid out on a force-placed insurance policy after a fire damaged a property during a mortgage foreclosure action. Plaintiffs, Martin S. Segal, Kalcheim Haber, LLC (Kalcheim), and Guardian Fire Adjusters, Inc. (Guardian) (collectively, plaintiffs) sought a declaration that defendant, Robin L. Segal, was not entitled to any proceeds from the insurance policy because she was not named as a "borrower" in the insurance policy. Plaintiffs further sought declarations as to the amount that plaintiffs—as well as two defendant mortgage lenders that are not parties to this appeal—were entitled to receive. The circuit court found that Robin was entitled to receive proceeds from the insurance policy and divided up the proceeds among the parties. The circuit court further concluded that neither Kalcheim (Martin's counsel) nor Guardian (a public adjuster retained by Martin to assist with the insurance claim) were entitled to any fees under the common fund doctrine. Plaintiffs appeal. For the following reasons, we affirm the circuit court's judgment.

¶ 3                                I. BACKGROUND

¶ 4 Martin and Robin were married in 1989. During the marriage, they purchased a martial residence in Wadworth, Illinois (property). In February 2012, the circuit court of Lake County entered a judgment dissolving Martin's and Robin's marriage (the dissolution judgment). The dissolution judgment noted that the property was listed for sale and would be sold. The property was encumbered by a first mortgage held by defendant, Wells Fargo Bank, N.A. (the Wells Fargo mortgage),[1] and a second mortgage held by defendant, PNC Bank, N.A. (the PNC mortgage).[2] The

[1]Wells Fargo was not the original lender, but we have omitted all discussion of the various assignments of the mortgage and indorsements to the promissory note because they are not necessary to an understanding of the issues on appeal.
[2]Neither Wells Fargo nor PNC are parties to this appeal.

dissolution judgment provided that the net proceeds from the sale of the property would be divided equally between Martin and Robin.

¶ 5    In March 2014, Wells Fargo filed a mortgage foreclosure action in the circuit court of Lake County to foreclose the Wells Fargo mortgage, and named in relevant part Martin, Robin, and PNC as defendants (foreclosure action). Martin and Robin were identified as borrowers on the first page of the Wells Fargo mortgage that was attached to Wells Fargo's complaint. Martin and Robin both signed the mortgage as borrowers, and Martin was the only signatory on the promissory note secured by the Wells Fargo mortgage. The Lake County circuit court ultimately entered orders of default against Martin, Robin, and PNC, and entered a judgment of foreclosure and sale.

¶ 6    On September 1, 2014, during the foreclosure proceedings—and after the entry of the judgment of foreclosure and sale—Wells Fargo obtained a force-placed hazard insurance policy (the policy) on the property through Standard Guaranty Insurance Company (Standard). On the declarations page of the policy, Wells Fargo was identified as the first named insured, and Martin was identified as the borrower. Robin's name did not appear on the policy. An endorsement to the policy provided that Standard would adjust all losses with the first named insured and "loss will be made payable to the first named insured and the borrower, as their interests appear, either by single instrument or by separate instruments payable respectively to the first named insured and the borrower, at [Standard's] option ***."

¶ 7    On September 16, 2014—just 16 days after Wells Fargo obtained the policy—a fire substantially destroyed the property. Martin signed an agreement with Guardian, a public adjuster, to assist in the settlement of an insurance claim, and he subsequently retained Kalcheim, a law firm, to represent him in settling the insurance claim, as well as in postjudgment proceedings in

the foreclosure action. Martin, through Guardian, submitted a proof loss to Standard in November 2014 that did not mention any interest in the property held by Robin.

¶ 8    The subject property was sold at a judicial auction and Wells Fargo was the highest bidder. In March 2015, the Lake County circuit court confirmed the judicial sale and entered an *in rem* deficiency judgment of $293,309.96 in favor of Wells Fargo. In April 2015, Standard issued a check in the amount of $704,248 payable to Wells Fargo, Martin, Standard, and Kalcheim. Robin separately sought benefits under the insurance policy, but her claim was denied. Wells Fargo deposited the proceeds into the Wells Fargo mortgage's escrow account. Wells Fargo subsequently sought to have the Lake County circuit court vacate its order confirming the judicial sale of the subject property. The circuit court initially vacated the confirmation of sale. Martin, however, represented by Kalcheim, filed a motion to reconsider, which the circuit court granted, and the confirmation of sale was reinstated. No party appealed any aspect of the Lake County foreclosure proceedings.

¶ 9    In February 2016, plaintiffs initiated the underlying proceedings the circuit court of Cook County. The parties ultimately litigated plaintiffs' verified second amended complaint for declaratory relief, which is the operative complaint and the subject of this appeal.[3] Count I of plaintiffs' complaint—which is the only count at issue in this appeal—alleged that a dispute had arisen among the parties concerning their rights to proceeds of the insurance policy: Wells Fargo believed it was entitled to its *in rem* deficiency judgment; PNC believed it was entitled to the amount due on the PNC mortgage; Robin believed she was entitled to half of the net proceeds from the policy after any payments to Wells Fargo and PNC; Guardian and Kalcheim believed they

_____

[3]During the underlying proceedings, plaintiffs filed a verified third amended complaint. The circuit court granted Robin's motion to strike and dismiss the third amended complaint and ordered that the second amended complaint would stand as plaintiffs' operative pleading. No issue is raised on appeal regarding the circuit court's order striking the third amended complaint.

were each entitled to "be paid their contract sums in preference to the claims or rights of either Martin or Robin, a fact which Martin concedes but Robin contests;"[4] and Martin believed that Wells Fargo was only entitled to the "net loan balance" under the policy, comprising unpaid principal and accrued interest as of the date of loss, and that neither PNC nor Robin were entitled to any of the proceeds. The complaint alleged that PNC's and Robin's interests in the subject property were extinguished by the Lake County foreclosure judgment. The net loan balance as of September 16, 2014, was $439,422.54, and Wells Fargo credit bid $225,250 at the judicial sale, thereby entitling Wells Fargo to no more than $214,172.54 of the policy proceeds. From the remaining $490,075.46, the complaint sought a declaration that: Kalcheim was entitled to 30% of the remaining proceeds under its contract with Martin ($147,022.64); that Guardian was entitled to 18% of the gross recovery ($704,248 x 18% = $126,764.64); and Martin was entitled to the remaining $216,288.18.[5]

¶ 10    Robin filed a motion for partial summary judgment on plaintiffs' complaint, asserting that both she and Martin were "borrowers" under the terms of the policy. She argued that the definition of "borrower" in the policy required a cross-reference to the mortgage because the policy defined "borrower" as "the person or persons who have entered into a lien or mortgage agreement with the first named insured for the property shown as the described location in the Declarations." Robin asserted that she was expressly identified as a borrower in the Wells Fargo mortgage, and thus was a "borrower" for the purposes of the policy. Martin filed a cross-motion for partial summary judgment arguing in part that even if Robin had an insurable interest in the subject property, her

---

[4]We note that Martin, Kalcheim, and Guardian have at all times in this litigation—including on appeal—been represented by Kalcheim.

[5]After plaintiffs filed their complaint, Robin filed a petition in the dissolution of marriage proceedings in Lake County seeking distribution of the insurance proceeds pursuant to the judgment of dissolution of marriage. The Lake County circuit court stayed proceedings on Robin's petition pending the outcome of plaintiffs' complaint for declaratory judgment.

nonparticipation in the insurance claim process precluded her from receiving any proceeds. On November 22, 2017, the circuit court—after briefing on Robin's motion and on a motion to reconsider, and after hearing oral argument on both motions—granted Robin's motion for partial summary judgment and found that Robin "is a borrower under the subject insurance policy." The circuit court found that there was a genuine issue of material fact regarding Robin's participation in the claims process, and therefore denied Martin's cross-motion for partial summary judgment.

¶ 11    Robin filed an answer to the verified second amended complaint and raised two affirmative defenses, asserting that Martin's and Guardian's public adjuster contract was void because Guardian was not properly licensed as a public adjuster in Illinois at the time of the contract, and that plaintiffs lacked standing to challenge her right to recover under the policy due to any alleged nonparticipation because plaintiff's claim was "based on the contract right of a third party, Standard, to deny payment of Policy limits if the Borrowers do not participate." She also filed a counterclaim against plaintiffs sounding in tortious interference with a contract. Plaintiffs answered Robin's counterclaim and affirmative defenses, and the parties engaged in discovery.

¶ 12    Plaintiffs moved for summary judgment on their complaint and on Robin's counterclaim. Plaintiff's motion did not address Robin's affirmative defenses. Robin filed a cross-motion for summary judgment on plaintiffs' complaint. After briefing on the cross-motions for summary judgment and hearing oral argument, the circuit court took the motions under advisement. While the motions were pending, the circuit court granted a fully briefed and argued motion by Wells Fargo to enforce a settlement agreement between the parties that Wells Fargo was entitled to $293,309.96 from the remaining insurance proceeds in order satisfy its *in rem* judgment against the property. Wells Fargo deposited the remaining $410,938.04 with the clerk of the circuit court.

¶ 13    On September 13, 2019, the circuit court entered a written order granting Robin's motion for summary judgment on plaintiffs' complaint and denying plaintiffs' cross-motion for summary judgment and made the following findings. Martin had reached an agreement with Kalcheim and Guardian, and the only issues remaining were "whether Robin has an insurable interest and is entitled to proceeds, and whether, if so[,] she should contribute to his payments to Guardian and [Kalcheim]." The circuit court's previous findings that Robin had an insurable interest in the property would not be reconsidered. Martin's argument that the subject property was vacant at the time of the fire loss—which, under the policy, would limit the policy to the net loan balance—was rejected because Robin submitted an unrebutted affidavit asserting that she still had personal items in the house at the time of the loss. The property was "unoccupied" rather than "vacant," and therefore the policy was not limited to Wells Fargo's net loan balance. There was no need to reach the issue of Robin's participation in the claim process because she was a borrower for purposes of the policy and the property was not vacant at the time of the loss. Guardian was not entitled to have Robin pay any portion of its contract fee with Martin because Martin failed to cite any authority that the "common fund doctrine" applies to nonlawyers. Robin was not obligated to pay any portion of Martin's contract fee to Kalcheim because Kalcheim did not provide any legal services to create the common fund; all it did was send a letter to Standard after Standard had already agreed to pay the policy limit.

¶ 14    Robin voluntarily dismissed her counterclaim. On October 1, 2019, the circuit court entered judgment in accord with its findings and declared that Martin and Robin were each entitled to $205,469.02 of the insurance proceeds, and that neither Kalcheim nor Guardian were entitled to any fees under the common fund doctrine and could only receive fees under their respective contracts with Martin. The circuit court retained jurisdiction to enforce its judgment until after the

7

postdissolution proceedings were completed in Lake County circuit court. The circuit court entered an order transferring the matter to Lake County circuit court for allocation of the insurance proceeds between Martin and Robin.

¶ 15    Plaintiff's filed a timely notice of appeal on October 30, 2019. Plaintiffs also filed a motion in the circuit court seeking a finding pursuant to Illinois Supreme Court Rule 304(a) (eff. Mar. 8, 2016) in order to avoid any doubts regarding the appealability of the October 1, 2019, judgment, which the circuit court granted on December 3, 2019, finding no just cause to delay enforcement of or appeal from the October 1, 2019, judgment.

¶ 16                                    II. ANALYSIS

¶ 17    On appeal, plaintiffs argue that the circuit court erred by finding that (1) Robin was a "borrower" for the purposes of the policy; (2) the property was not vacant; and (3) the common fund doctrine did not apply to Martin's contract with Kalcheim. We address these arguments in turn.[6]

¶ 18    First, plaintiffs argue that the circuit erred by granting summary judgment in favor Robin on the definition of "borrower" in the policy. They contend that the policy defined "borrower" as "the person or persons who have entered into a lien or mortgage agreement with the first named insured for the property" described in the declarations, but that an endorsement to the policy changed the definition of "borrower." Specifically, they argue that the "replacement cost endorsement" modified the loss payment provision of the policy and provided in relevant part that Standard would "adjust all losses with the first named insured. Loss will be made payable to the first named insured and the borrower as their interests appear, either by a single instrument or by

_____

[6]We note that plaintiffs have not filed a reply brief in this court. Plaintiffs sought two extensions of time to file their reply brief and their second motion was denied. Plaintiffs did not file a motion for leave to file their reply brief *instanter* along with an attached reply brief, as is common practice before this court for missed briefing deadlines.

separate instruments payable to the first named insured and the borrower at our option." In plaintiffs' view, because the loss payment provision was expanded to specifically state that loss payment would be made to both the first named insured and the borrower—rather than just to the first named insured—only the borrower specifically identified in the declarations page was an insured entitled to receive any payment under the policy. Plaintiffs argue that the policy was unambiguous and that the endorsement effectively "named only Martin as the borrower[.]" They contend that circuit court did not need to look beyond the endorsement to determine who the borrowers were under the policy. We disagree.

¶ 19    As an initial matter, the argument section of plaintiffs' brief on this issue is entirely devoid of any citations to the record on appeal, in violation of Supreme Court Rule 341(h)(7) (eff. May 25, 2018). Our supreme court's rules governing appellate briefs require litigants to provide citations to the record in both their statement of facts (Ill. S. Ct. R. 341(h)(6)) and in their arguments (Ill. S. Ct. R. 341(h)(7)). Failing to provide citations to the record on appeal in support of an argument is a violation of Rule 341(h)(7), "the consequence of which is the forfeiture of the argument." *Hall v. Naper Gold Hospitality LLC*, 2012 IL App (2d) 111151, ¶ 12; see also *People v. Sprind*, 403 Ill. App. 3d 772, 779 (2010) ("The failure to provide citations to the record is a violation of [Rule 341(h)(7)], the consequence of which is the forfeiture of the argument lacking those citations."). "Arguments that do not comply with Rule 341(h)(7) do not merit consideration on appeal and may be rejected by this court for that reason alone." *Wells Fargo Bank, N.A. v. Sanders*, 2015 IL App (1st) 141272, ¶ 43. Here, by failing to provide citations to the record in support of plaintiffs' argument, they have forfeited their claim of error. However, because plaintiffs' violation is relatively minor and we can understand plaintiffs' argument despite their technical forfeiture, we will address the argument on the merits. Plaintiffs' counsel, however, is

cautioned that future violations of the rules governing appellate briefs may not be met with leniency.

¶ 20    Summary judgment is appropriate when "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2-1005(c) (West 2018). "When parties file cross-motions for summary judgment, they agree that only a question of law is involved and invite the court to decide the issues based on the record." *Pielet v. Pielet*, 2012 IL 112064, ¶ 28. We review a circuit court's ruling on summary judgment *de novo*. *Standard Mutual Insurance Co. v. Lay*, 2013 IL 114617, ¶ 15.

¶ 21    In construing a contract, the primary objective is to give effect to the intentions of the parties. *Thompson v. Gordon*, 241 Ill. 2d 428, 441 (2011). We first look to the plain language of the contract to ascertain the parties' intent. *Id.* We construe a contract as a whole and view each provision in light of the other provisions. *Id.*

¶ 22    Here, we find no error in the circuit court's finding that Robin was a borrower for the purposes of the policy. The policy expressly defines "borrower" as "the person or persons who have entered into a lien or mortgage agreement with the first named insured for the property." Robin was identified in the Wells Fargo mortgage as a borrower and she signed the mortgage above a line reserved for borrowers. The policy's definition of "borrower" requires cross-reference to the Wells Fargo mortgage to determine who is considered a borrower under the policy. Robin, as a borrower under the mortgage, was a "borrower" for the purposes of the policy. While the declarations page of the policy only identified Martin as a borrower, it is important to recognize that the policy was obtained by Wells Fargo to protect Wells Fargo's interest in the property and was not procured by Martin or Robin to protect their interests in the property. Just because Martin

was the only person identified in the declarations as a borrower does not mean that he was the only borrower under the mortgage with an insurable interest in the property. Given the policy's unambiguous definition of "borrower," the declarations page cannot be read in isolation as only protecting Martin's interest in the property. Therefore, Robin was a borrower for the purposes of the policy.

¶ 23    Furthermore, we reject plaintiffs' argument that the replacement cost endorsement changed the policy's definition of "borrower." Plaintiffs' argument is simply not supported by the language of the endorsement, which does not alter the definition of "borrower," but instead altered the loss payment provision of the policy to provide that loss would be made payable to Wells Fargo and the borrower. Given that the policy's definition of borrower required a cross-reference to the Wells Fargo mortgage, the endorsement must be read the same way: loss would be payable to the parties to the mortgage, *i.e.*, the mortgagee/first named insured (Wells Fargo), and the borrowers (Martin and Robin). Nothing in the policy or the endorsement reflects an intent to give preference to Martin's interest in the property or to eliminate Robin's interest in the property. The omission of Robin's name from the policy did not result in her loss of an interest in the property. Martin does not direct our attention to any evidence in the record to show that Standard's omission of Robin's name from the policy was the result of a deliberate choice. Here, the circuit court properly examined the policy language in combination with the Wells Fargo mortgage to conclude that Robin was entitled to a share of the policy proceeds.

¶ 24    Next, plaintiffs argue that the circuit court erred by finding that the property was not vacant at the time of the fire. The policy provided:

> "If the [subject property] is vacant and the mortgage on the property has been declared in default by the mortgagee at the time of a loss, [Standard] shall pay no

more that the first named insured's interest in the property at the time of loss unless the borrower participates in the claim. The first named insured's interest is represented by the borrower's net loan balance."

Plaintiffs contend that the Wells Fargo mortgage had been declared to be in default and that the property was vacant at the time of the loss, thereby requiring Robin to either participate in the claim or receive no benefits. Plaintiffs argue that the circuit court erred by concluding that the property was "unoccupied" rather than "vacant," and summary judgment should have been entered in their favor. Alternatively, they argue that there was a question of fact as to whether the property was vacant that should have precluded the entry of summary judgment in favor of Robin.

¶ 25      Robin contends, however, that the issue of vacancy—a threshold question to be determined before the circuit court might reach plaintiffs' argument that Robin was required to participate in the insurance claim—is part and parcel of a claim that plaintiffs never pleaded in their operative complaint. Robin asserts that plaintiffs' operative complaint asserted that she was not an insured under the policy because she was not named in the policy, and that her interest in the policy's proceeds was extinguished by the judgment of foreclosure and sale, which extinguished her interest in the property. Robin argued in the circuit court, and argues in this court, that plaintiffs did not set up any claim in their operative pleading based on Robin's alleged lack of participation, and therefore plaintiffs could not move for or obtain summary judgment on that issue. In the circuit court, plaintiffs did not respond to this issue, and the record on appeal does not contain a transcript of the hearing held on the cross-motions for summary judgment.

¶ 26      We agree with Robin that the circuit court did not need to reach the issue of vacancy where plaintiffs' complaint never pleaded any theory of relief based on Robin's alleged lack of participation in the claim. "The purpose of a complaint is to crystallize the issues in controversy,

12

so that a defendant will know what claims to meet." *Filliung v. Adams*, 387 Ill. App. 3d 40, 51 (2008). The circuit court looks to the pleadings when ruling on a motion for summary judgment to determine what issues are before it. *Id.* "If a plaintiff desires to place issues in controversy that were not named in the complaint, the proper course of action is to move to amend the complaint." *Id.* "If the plaintiff does not seek to amend, then it cannot move for summary judgment on those issues." *Id.*

¶ 27 Here, plaintiffs' operative complaint alleged that Robin was not entitled to any of the policy's proceeds because she was not named as a borrower in the policy and that any interest she might have in the proceeds was extinguished by the judgment of foreclosure and sale. The circuit court rejected both of those theories. Plaintiffs did not allege in their operative complaint their alternative theory that the Robin could not share in the proceeds because the property was vacant at the time of the loss and she did not participate in the claims process. Plaintiffs therefore could not move for summary judgment on the issue of Robin's alleged lack of participation, and the issue of whether the property was vacant at the time of the fire loss was not part of any controversy ripe for summary judgment. *Id.* Therefore, even if plaintiffs presented a persuasive argument regarding the circuit court's vacancy ruling, we would have no basis for disturbing the circuit court's entry of summary judgment in favor of Robin on the issues that were in actual controversy. We therefore have no basis from which to disturb the circuit court's entry of summary judgment in favor of Robin on plaintiffs' operative complaint.

¶ 28 Finally, plaintiffs argue that the circuit court erred by finding that the common fund doctrine did not require Robin to contribute to Kalcheim's fee agreement with Martin. Plaintiffs argue that Kalcheim's efforts created and preserved the insurance proceeds because Kalcheim referred Martin to Guardian to assist in the adjustment of the claim, and Kalcheim successfully

13

prevented Wells Fargo from vacating the confirmation of the judicial sale in the foreclosure proceedings, thereby limiting Wells Fargo's share of the proceeds to its *in rem* deficiency judgment. Plaintiffs contend that Kalcheim's efforts benefitted Martin, Robin, and Guardian by preserving the common fund against Wells Fargo's attempt to assert a claim against the policy limit.

¶ 29    "The common fund doctrine permits a party who creates, preserves, or increases the value of a fund in which others have an ownership interest to be reimbursed from that fund for litigation expenses incurred, including counsel fees." *Scholtens v. Schneider*, 173 Ill. 2d 375, 385 (1996). "The common fund doctrine rests upon the perception that persons who obtain the benefit of a lawsuit without contributing to its costs are unjustly enriched." *Bishop v. Burgard*, 198 Ill. 2d 495, 508-09 (2002) (citing *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980)). "The doctrine is based on the court's inherent equitable powers and the rationale that fees and expenses incurred in creating the fund be apportioned among those who benefit from its creation." *Wajnberg v. Wunglueck*, 2011 IL App (2d) 110190, ¶ 17. "Whether the common fund doctrine applies to any particular case is a question of law which we review *de novo*." *Linker v. Allstate Insurance Co.*, 342 Ill. App. 3d 764,770-71 (2003).

¶ 30    Once again, we observe that plaintiffs' argument in their appellate brief fails to provide citations to the record on appeal to support their factual assertions regarding the proceedings in the foreclosure action, in violation of Rule 341(h)(7). We also observe that plaintiffs' operative complaint never pleaded a common fund doctrine theory; their theory was cursorily raised in their motion for summary judgment with the assertions that "[Kalcheim's] representation in the foreclosure proceedings resulted in Wells Fargo's Motion to Vacate the foreclosure sale and PNC's motion to vacate its Order of Default being denied; both of which created a larger fund for other

parties," and "[h]ere, the efforts of [Kalcheim] and Guardian *** created, increased, and preserved the policy limits recovery." Plaintiffs' operative complaint, however, made no effort to assert a claim under the common fund doctrine. "A party cannot seek summary judgment on a theory that was never pled in the complaint." *Steadfast Insurance Co. v. Caremark Rx, Inc.*, 373 Ill. App. 3d 895, 900 (2007). The combination of plaintiffs' briefing violations and their failure to adequately frame the issue for disposition are enough to conclude that plaintiffs are not entitled to any relief from the circuit court's judgment denying their common fund arguments.

¶ 31     Regardless, we see no principled basis to apply the common fund doctrine to this case and find that the circuit court properly exercised its equitable powers by refusing to apply the doctrine. Even if it is true that Kalcheim's efforts in the foreclosure action prevented Wells Fargo from securing a larger share of the insurance proceeds, Kalcheim's subsequent course of conduct clearly and specifically sought to ensure that Robin would not receive any share of the proceeds. Any benefit to Robin was ameliorated by Kalcheim filing this declaratory judgment as counsel to benefit itself, Martin, and Guardian and against Robin, and by seeking to exclude her from sharing in any portion of the insurance proceeds and denying throughout the pleadings and motion practice in the circuit court that Robin had any interest in the proceeds at all. Kalcheim's argument is transparent: it steadfastly denied that Robin was entitled to any benefit under the policy and then, at a late stage in the underlying litigation, sought to ensure that *it* would receive all that it hoped to receive by claiming that Robin should compensate it for its initial efforts on behalf of Martin and Guardian. In the meantime, Robin had to defend against the declaratory judgment action, undoubtedly incurring her own attorney fees and costs, to secure what was rightfully hers. The circuit court correctly concluded that equity did not require Robin—Kalchiem's direct adversary in this litigation—to contribute fees for what clearly were Kalcheim's efforts on behalf of itself,

Martin, and Guardian. We therefore affirm the circuit court's judgment denying Kalcheim fees from Robin under the common fund doctrine.

¶ 32                                    III. CONCLUSION

¶ 33    For the foregoing reasons, the judgment of the circuit court is affirmed.

¶ 34    Affirmed.